**Luther Marion SHADLE, Appellee,**

v.

**SUPERWOOD CORPORATION, Appellant.**

No. 87–2632.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1988.

Decided Oct. 6, 1988.

Rehearing and Rehearing En Banc Denied Dec. 7, 1988.

Frederick S. Ursery, Little Rock, Ark., for appellant.

Charles R. Padgham, Hot Springs, Ark., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and STUART, Senior District Judge.*

BOWMAN, Circuit Judge.

Superwood Corporation appeals an order of the District Court awarding Luther Marion Shadle reinstatement to his former position and $20,000 in back pay plus $3,938.44 in interest pursuant to the Veterans' Reemployment Rights Act ("Act"), 38 U.S.C. §§ 2021, *et seq.* We reverse.

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

Shadle worked for Superwood Corporation from 1973 to 1979, at which time he terminated his employment in order to enlist in the United States Navy. He received his honorable discharge from the Navy on September 26, 1983. On or about November 1, 1983, Shadle traveled to the guard shack at the Superwood Corporation, the place where he had applied in 1973, and requested a job application. The guard explained that Superwood was not hiring as a number of people had been laid off. Shadle then asked to see Jesse Rogers or Harold Henderson, the personnel manager and the plant manager, respectively, and was told that they were not available. After this exchange, he left the plant. Later, around Thanksgiving, he telephoned the plant and asked for Rogers or Henderson. He was told they were not there, and may or may not have left his name and number (he testified he could not remember). His next contact with Superwood did not occur until the summer of 1984, when he spoke directly with Rogers. While there is some dispute as to what transpired at this meeting, it is clear that Shadle did not return to Superwood's employ.[1]

On July 25, 1986, Shadle brought this action, basing his case on the Act, which confers on veterans the right to be reinstated to jobs they held prior to military service if they apply for reemployment within ninety days after their release from service. The case was tried to the District Court without a jury. The court held that a returning veteran has no obligation to inform an employer of his status as a veteran, and, based on Shadle's visit to the guard shack, that he had made "application for reemployment" within the meaning of 38 U.S.C. § 2021(a)(2). The court ordered Superwood to reinstate Shadle and to pay him back wages plus interest.

For reversal, Superwood contends that the trial court erred in holding that Shadle had no obligation to tell his former

1. The 1984 meeting is in any event irrelevant to Shadle's claims under the Act because it occurred more than 90 days after his departure from the Navy. *See* 38 U.S.C. § 2021(a)(2).

employer of his status as a veteran.[2] We agree.

Section 2021 of 38 U.S.C. provides:

(a) In the case of any person who is inducted into the Armed Forces of the United States under the Military Selective Service Act (or under any prior or subsequent corresponding law) for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service, and (1) receives a certificate described in section 9(a) of the Military Selective Service Act (relating to the satisfactory completion of military service), and (2) makes application for reemployment within ninety days after such person is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

. . . .

(B) if such position was in the employ of a State, or political subdivision thereof, or a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or the employer's successor in interest to such position or to a position of like seniority, status, and pay.

Although this statute is to be liberally construed for the benefit of those who have served their country, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946), plaintiff bears the burden of proving that he has satisfied the statutory requirements and is entitled to receive reemployment rights. *Trulson v. Trane Co.*, 738 F.2d 770, 772–73 (7th Cir.1984).

A critical requirement for entitlement to reemployment rights under the Act is that a veteran "make[ ] application for reemployment." 38 U.S.C. § 2021(a)(2). The dispositive issue in this case is whether, as a matter of law, what Shadle did amounts to making an "application for reemployment" within the meaning of § 2021.

No bright-line test has been fashioned to resolve this issue. Rather, a case-by-case determination focusing on the intent and reasonable expectations of both the former employee and employer, in light of all the circumstances, has been held to best serve the goals of the Act. *See Baron v. United States Steel Corp.*, 649 F.Supp. 537, 541 (N.D.Ind.1986).

Here, it is obvious that Shadle intended to apply for reemployment and expected to be given due consideration. But, what of Superwood's intent and reasonable expectations? Instead of addressing this question, the District Court concluded that "it's the corporation's duty to make sure that its applications procedures are such that that kind of information is picked up. It's simply a matter of—it's their burden under the law to be aware of those things." Trial Transcript at 108.

We believe that this interpretation of the statute places an impossible burden on the employer. "Common sense dictates that an employer cannot be required to give every inquiry, regardless of how slight, full consideration and attention." *Baron*, 649 F.Supp. at 541. What, then, may an employer reasonably expect under the Act? The case law provides some guidance on this issue. For example, while a written application need not be submitted in every situation, *see Borseth v. City of Lansing*, 338 Mich. 53, 60, 61 N.W.2d 132, 136 (1953), it is clear that an application involves more than a mere inquiry. *See Lacek v. Peoples Laundry Co.*, 94 F.Supp. 399, 401 (M.D.Pa. 1950) (no entitlement to reinstatement or lost wages where petitioner merely visits the supervisor and inquires as to conditions in the plant).

It is also instructive to consider the procedures outlined in the Veterans' Reemployment Rights Handbook, a publication of the United States Department of Labor. In Chapter VI, entitled "Applying for Reemployment," the Handbook suggests

---

**2.** Superwood initially made, but has abandoned, an argument that Shadle's claim is barred by the doctrine of laches.

that the "veteran should identify himself as a former employee returning from military service." U.S. Dep't of Labor, Veterans' Reemployment Rights Handbook 27 (1970).[3] A "mere inquiry about employment possibilities, unless it would reasonably convey the idea of a claim for reemployment, is not enough." *Id. See also* 5 C.F.R. § 353.401(a)(i) (former Executive branch and District of Columbia employees with a right to restoration under § 2021 may appeal a negative reemployment decision if the employee has first properly notified the agency concerned of the desire to exercise restoration rights).

We are persuaded that under the Act an employer would reasonably expect, and is entitled, to be notified of a returning veteran's status qua returning veteran, former employment, and desire for reemployment, though there are circumstances in which it is not necessary for this to be done expressly. *See, e.g., Thomas v. City & Borough of Juneau,* 638 F.Supp. 303, 307 (D.Alaska 1986) (petitioner satisfied statutory requirements when the evidence showed that employer was aware he was reapplying as a veteran and had left his prior position to join the military). What constitutes adequate notice under the Act will vary from case to case, depending on the size of the firm, the number of employees, the length of time the returning veteran has been away, and a myriad of other factors. An employer who claims lack of actual knowledge does not necessarily win the case. An objective standard governs, and the critical inquiry always must be whether, considering all the circumstances, a reasonable employer would be put on notice that the applicant is a returning veteran who seeks reemployment.

Here, Shadle did not communicate in any fashion to Superwood within the statutory ninety-day period his status or his desire

for reemployment. He merely visited the guard shack, asked for a job application, and was told that Superwood had people on layoff and thus was not hiring. He then asked to see Rogers or Henderson, and was told they were not available. With that, he left, and did nothing more to pursue his reemployment rights during the ninety-day period than to make one phone call in which he asked to speak to Rogers or Henderson and was informed neither was present. This is hardly enough to put a reasonable employer on notice that a returning veteran is seeking reemployment, and it therefore is insufficient to create a factual issue concerning the adequacy of notice to the employer. On this record, we hold as a matter of law that Shadle did not make "application for reemployment" within the meaning of § 2021, and thus has not fulfilled a statutory condition precedent to the imposition of liability on Superwood under the Act.

The judgment of the District Court is reversed.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. The court today recognizes that the statute is to be construed liberally for the benefit of those who serve their country, but abruptly departs from this goal and erects an unduly burdensome requirement for the returning veteran.

The district court analyzed the requirement placed on the veteran in a practical and common-sense fashion and in full accord with the intention of the statute. It held that plaintiff had made application for reemployment within the meaning of the statute when he traveled to defendant's plant, presented himself at the proper place to make application, and requested a for-

---

**3.** In 1986, the Handbook was updated and reprinted. The 1986 Handbook has this to say about applying for reemployment:

The request for reemployment may be made orally or in writing, expressly or by implication. No special form or procedure is required by law; however, the request should convey two elements in its message: (1) that the individual is a former employee; and (2)

that he is now returning from service in the Armed Forces and is seeking reinstatement in employment. A mere inquiry about employment opportunities is not a valid application for reinstatement unless it somehow conveys the idea of a claim for reemployment.

U.S. Dep't of Labor, Veterans' Reemployment Rights Handbook 7–1 (1986).

mal written application form. He was not given the application. He later called the plant asking to speak to the personnel manager and the plant manager, who knew he had gone into the Navy, but was again rebuffed.

We should not require more.