**David A. McGUIRE, Plaintiff–Appellant,**

v.

**UNITED PARCEL SERVICE, Defendant–Appellee.**

No. 97–3455.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1998.

Decided Aug. 10, 1998.

John A. Dienner, III, Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, Chicago, IL, for Plaintiff–Appellant.

D. Scott Watson, Keck, Mahin & Cate, John A. McDonald (argued), McDermott, Will & Emery, Chicago, IL, for Defendant–Appellee.

Before MANION, KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

David McGuire served in the United States Army during Operation Joint Endeavor in Bosnia. When he returned from active duty, he wanted to resume his former employment at United Parcel Service. After a series of communications with United Parcel Service, McGuire brought this suit under the Uniformed Services Employment and Reemployment Rights Act of 1994. The district court granted summary judgment to United Parcel Service. We affirm.

## I. HISTORY

McGuire, the non-moving party, did not comply with the Local Rules of the Northern District of Illinois. Those rules require the moving party to submit a statement of uncontested facts, N.D. Ill. Local Rule 12(M), and the non-moving party to respond "to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon," N.D. Ill. Local Rule 12(N)(3)(a). The United Parcel Service ("UPS") submitted a 12(M) statement of uncontested facts. McGuire submit-

ted a response, but his response did not comply with Rule 12(N). McGuire responded to UPS's numbered paragraphs, but he frequently used such language as "Petitioner has no personal knowledge of Segovia's conversation with LeBel and therefore neither admits nor denies said allegation, but demands strict proof thereof." Pet'rs Resp. to Resp'ts Rule 12M Mot. for J. on the Pleadings, *McGuire v. United Parcel Service*, No. 97 C 0232, 1997 WL 543059 (N.D.Ill. July 8, 1997). McGuire also did not include a separate statement of additional facts requiring denial of summary judgment. He included additional facts in his response to the 12(M) statement as well as in his supporting memorandum of law—neither method is appropriate.

■ "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. Local Rule 12(N)(3)(b). An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission. *See Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 626–27 (7th Cir.1998); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.1997). The district court strictly enforced the local rules against McGuire, and we will do likewise. We will recite the facts in the light most favorable to McGuire where he properly asserted or controverted those facts. We will not take into consideration those additional facts improperly inserted into his pleadings.

UPS employed McGuire as an air sales representative in Chicago since April 1993. During his time at UPS, McGuire was a member of the United States Army Reserve. In late 1995, McGuire told UPS that the Army was dispatching his activated reserve unit to Bosnia. McGuire provided UPS with written notice on December 22, 1995, and he followed up with a copy of his official orders on January 2, 1996. During McGuire's absence, UPS did not hire a replacement. Rather, other employees performed McGuire's duties.

While still in Bosnia on April 27, 1996, McGuire sent a letter to his supervisor, John Segovia, asking about the procedures for reemployment. UPS received the letter, but Segovia never saw it. On June 6, 1996, McGuire telephoned UPS. Segovia was not available. McGuire spoke instead with Brad Call, who said that Segovia must have received the letter and was looking into reemployment procedures.

McGuire was discharged from active military service on June 30, 1996. On July 11, he sent a letter to Segovia asking about "the procedures for getting my job back. If you cannot answer this please pass it on to someone who can." Segovia contacted Ed LeBel in the Human Resources Department ("HR") at UPS. LeBel told Segovia that there were no particular procedures or requirements— the employee simply submits an employee update form. Segovia then responded to McGuire's letter:

> Dave—
>
> The law specifies there are no requirements for reemployment.
>
> Please touch bases w/ Ed LeBel (HR) upon your return.
>
> Look to see you—
>
> John Segovia.

McGuire received the letter. He interpreted the first sentence to mean that UPS was not required to reemploy him. McGuire did not contact Ed LeBel. Rather, he tried to contact Segovia. He and Segovia each left several telephone messages for each other.

McGuire contacted an attorney. Segovia received a letter from the attorney informing him that McGuire thought UPS was refusing to reemploy him. Segovia telephoned the attorney and explained that UPS was not refusing to reemploy him and that all he needed to do was contact HR. The attorney told McGuire that UPS was not refusing to reemploy him and that he needed to contact Segovia, not HR.

McGuire never contacted Ed LeBel. He brought this suit claiming that UPS was refusing to reinstate him in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). The district court granted summary judgment in favor of UPS. McGuire appeals.

## II. ANALYSIS

We review a district court's decision to grant summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of *some* alleged factual dispute between the parties," *id.* at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

Congress enacted the USERRA in 1994 to provide "prompt reemployment," 38 U.S.C. § 4301(a)(2), to those who engage in "noncareer service in the uniformed services," *id.* § 4301(a)(1). The USERRA replaced the Veterans' Reemployment Rights Act ("VRRA"), but Congress intended for the case law developed under the VRRA to aid in interpreting the USERRA. *See* H.R.Rep. No. 103–65, at 21 (1993), reprinted in 1994 U.S.C.C.A.N. 2449, 2454 ("[T]he Committee wishes to stress that the extensive body of case law that has evolved over that period, to the extent it is consistent with the provisions of this Act, remains in full force and effect in interpreting those provisions."). Like the VRRA, the USERRA is to be liberally construed in favor of those who served their country. *See Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). But the plaintiff at all times bears the burden of proving that he is entitled to reemployment. *See Trulson v. Trane Co.*, 738 F.2d 770, 772–73 (7th Cir. 1984).

The USERRA provides in relevant part as follows:

(a) [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if—

(1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

(2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed service does not exceed five years; and

(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

38 U.S.C. § 4312(a)(1–3). The issue for our decision is whether McGuire submitted an "application for reemployment" in accordance with 38 U.S.C. § 4312(a)(3).

The statute does not further define what it means to submit an application for reemployment. However, cases under the VRRA have elaborated this term. An application for reemployment "involves more than a mere inquiry." *Baron v. United States Steel Corp.*, 649 F.Supp. 537, 541 (N.D.Ind.1986); *Lacek v. Peoples Laundry Co.*, 94 F.Supp. 399 (M.D.Pa.1950) (Asking about conditions at plant and chatting with friends is not enough to make application.). "No bright-line test has been fashioned to resolve this issue [of what it means to submit an application for reemployment]. Rather, a case-by-case determination focusing on the intent and *reasonable expectations of both the former employee and employer*, in light of all the

circumstances, has been held to best serve the goals of the Act." *Shadle v. Superwood Corp.*, 858 F.2d 437, 439 (8th Cir.1988) (emphasis added). Applying a similar analysis, we will examine the reasonable expectations of UPS and McGuire under the circumstances.

What UPS needed to comply with the statute was notice that McGuire was a returning serviceman, previously employed by UPS, who was seeking reemployment. UPS is a large organization. Notice to one person may or may not constitute notice under the statute. *See Shadle*, 858 F.2d at 440 (asking for application from guard at guard shack not sufficient notice to employer). Reasonable notice to a large corporation "in light of all the circumstances," *id.* at 439, is quite a different thing from reasonable notice to a small employer. In *Hayse v. Tennessee Dep't of Conservation*, 750 F.Supp. 298 (E.D.Tenn.1989), *aff'd*, 915 F.2d 1571, 1990 WL 150797 (6th Cir.1990), a returning serviceman wanted to return to his former job as a trail maintenance worker in a state department of 1600 employees. See *id.* at 300, 304. He asked his former supervisor about returning to his job, and his supervisor replied that there were no openings at the time. *See id.* The supervisor had no authority or responsibilities regarding personnel matters. *See id.* However, he had suggested before that the plaintiff contact a personnel worker when he returned from the Army. *See id.* at 301. The district court held that the plaintiff did not make application. *See id.* at 305. The court considered the reasonable expectations of the employer, noting that the department employed 1600 people and had "numerous divisions, supervisors, and subordinates." *Id.* at 304. The court decided it was unreasonable for the department to expect that the only notice it would receive would be to a trail supervisor (who was also the applicant's uncle) who had no authority to hire the applicant and did not even keep application forms available. *See id.* "The Department has a right to expect that notice be received by someone who is in fact in a decisionmaking position, i.e., someone who is able to hire the returning veteran." *Id.*

We find the reasoning in *Hayse* persuasive. Like the applicant in *Hayse*, McGuire contacted only his old supervisor. UPS's sole notice that McGuire wanted reemployment was McGuire's inquiries to his supervisor. Large employers like UPS cannot be expected to train all of their supervisors in the intricacies of employment law—that is why they create personnel departments. We can expect UPS to train its supervisors to refer personnel matters to those who are trained to handle them properly. This is precisely what happened here. After McGuire wrote to Segovia about the procedures for getting his job back, Segovia checked within the UPS bureaucracy to find the right contact person. Segovia wrote back that he should contact Ed LeBel in HR. All that McGuire needed to do to get his job back was complete a Return to Work form in HR.

We also examine McGuire's reasonable expectations. When McGuire wrote to Segovia to ask about the procedure for getting his job back, Segovia responded that "The law specifies there are no requirements for reemployment. Please touch bases w/ Ed LeBel (HR) upon your return. Look to see you—John Segovia." Without the first sentence this would be a clear statement that to get his job back, McGuire needed to see Ed LeBel. McGuire was understandably confused by the first sentence. He interpreted the first sentence to mean that Segovia believed that UPS was not required to reemploy him. While isolated from context we could agree that McGuire's interpretation of the first sentence was reasonable, in context we cannot agree with him. First, the note went on to say that McGuire should see Ed LeBel. If McGuire was, as he says, confused by the first sentence, he could have contacted Ed LeBel for clarification. Second, the note closed with "Look to see you"—a strange closing if Segovia did not expect to see McGuire back at work soon. And third, McGuire knew that his supervisor worked in air sales, not in HR. Any employee of a large organization has dealt with the personnel department, by whatever name it is known there. We can reasonably expect that if an applicant's former supervisor tells him to contact the personnel department about be-

ing rehired, the applicant will understand that the supervisor is deferring to someone who can take action.

We hold that McGuire did not submit an application for reemployment. Because these claims are reviewed on a case-by-case basis, we should not be heard to say that those returning from the military can only submit applications for reemployment to personnel departments. Rather, we hold that under the particular circumstances presented to us, McGuire did not give UPS reasonable notice that he wanted his job back.

For the foregoing reasons the judgment of the district court is AFFIRMED.