In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1437

SUSAN A. SCHNEIKER,

Plaintiff-Appellant,

v.

FORTIS INSURANCE COMPANY,
formerly known as TIME INSURANCE
COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98 C 14--J.P. Stadtmueller, Chief Judge.

Argued September 24, 1999--Decided January 6, 2000

Before BAUER, RIPPLE and DIANE P. WOOD, Circuit
Judges.

RIPPLE, Circuit Judge.  After her discharge,
Susan A. Schneiker filed this action against her
former employer, Fortis Insurance Company
("Fortis"), for violating the Americans with
Disabilities Act (the "ADA"). In her complaint,
Ms. Schneiker alleged that Fortis failed to
accommodate her alcoholism and severe depression
and discharged her because of these impairments.
The district court granted summary judgment for
Fortis; Ms. Schneiker now appeals. For the
reasons set forth in this opinion, we affirm the
judgment of the district court.

I

  Because the district court granted summary
judgment, our review of that judgment is de novo.
See Ross v. Indiana State Teacher's Ass'n Ins.
Trust, 159 F.3d 1001, 1012 (7th Cir. 1998), cert.
denied, 119 S. Ct. 1113 (1999). In our review, we
consider the evidence in the light most favorable
to the non-moving party and draw all reasonable
inferences in favor of that party, Ms. Schneiker.
See Skorup v. Modern Door Corp., 153 F.3d 512,
514 (7th Cir. 1998). Summary judgment is
appropriate when the pleadings, depositions, and
other materials in the record show that there is

no disputed material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In granting summary judgment, the district court relied primarily on the proposed findings of fact submitted by Fortis because Ms. Schneiker had failed to comply with Local Rule 6.05, which required the submission of her own proposed findings of fact in her response to Fortis' summary judgment motion. Specifically, Local Rule 6.05(b) requires the non-moving party to submit "[a] specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists." E.D. Wis. R. 6.05(b)(1). To comply with the local rule, the proposed findings of fact must refer to any contested findings of fact by paragraph number and must cite evidentiary materials to support all factual propositions, whether contested or not. The district court found that the proposed findings of fact submitted by Ms. Schneiker did not comply with the local rule because her submission was not a point-by-point response to the proposed findings of fact submitted by Fortis and was "chock-full of misstatements, unsupported allegations, and legal argument." R.46 at 2.

The district court was entitled to enforce the local rule, and like the district court, we accept as true all material facts as submitted by Fortis and not properly contested by Ms. Schneiker. See Brasic v. Heinemann's Inc., 121 F.3d 281, 284, 285-86 (7th Cir. 1997); see also Spitz v. Tepfer, 171 F.3d 443, 449 (7th Cir. 1999) (enforcing a comparable local rule to the Eastern District of Wisconsin's Rule 6.05); Garrison v. Burke, 165 F.3d 565, 567 (7th Cir. 1999) (same); Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc., 155 F.3d 883, 888-89 (7th Cir. 1998) (enforcing a comparable local rule where the appellant failed to comply with the rule in the district court and in her submission to the court of appeals). We also do not take into account any facts proposed by Ms. Schneiker that are unsupported by references to materials in the record, but as the district court did, we shall include those facts properly presented by Ms. Schneiker and supported by the record. See, e.g., McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998). We note, however, that our enforcement of the local rule makes little difference in this case because Ms. Schneiker does not seriously contest the facts submitted by Fortis or relied upon by the district court. See Corder v. Lucent Techs. Inc., 162 F.3d 924, 927 (7th Cir. 1998).

II

Ms. Schneiker worked for Fortis from July 1988, until her termination in July 1994. In late 1989, Ms. Schneiker began experiencing emotional problems and sought assistance through Fortis' employee assistance program. At that time, Ms. Schneiker came under the care of a psychiatrist, Dr. John Wean, who advised Ms. Schneiker that she was suffering from depression and prescribed medication for her. A few months later, in May 1990, Ms. Schneiker again began having emotional problems. This time, Dr. Wean had her hospitalized in a psychiatric hospital. Ms. Schneiker was hospitalized for her depression on two more occasions in 1990. According to Ms. Schneiker, "[t]he third hospitalization identified a problem of alcohol." R.35 at 2. After this hospitalization, Ms. Schneiker was released to an outpatient program, which she attended 3 nights a week for approximately 6 months. She also attended Alcoholics Anonymous meetings.

Ms. Schneiker admitted that, despite her personal struggle with her depression during this time, "[t]hings were going well at work." R.35 at 3. Ms. Schneiker worked as a Benefit Analyst in Fortis' Individual Medical Benefits Department, and, even though she had received a written warning for poor production in early 1990, she improved her performance at Fortis and was even promoted in April of that year. Other than the written warning, she received "excellent reviews." R.34 at 2 (Schneiker Affidavit). In fall 1992, Ms. Schneiker's manager asked her to participate in a temporary project, an assignment Ms. Schneiker gladly accepted because it was headed by the marketing department and Ms. Schneiker was eager to transfer to that department.

Ms. Schneiker's problems at Fortis began in 1993. Early that year, one of Ms. Schneiker's regular supervisors, Dana Sanders, also became her supervisor on the special project on which she was working. Sanders informed Ms. Schneiker that she would no longer be working on the special project and that she should return to her regular position. Ms. Schneiker disputed Sanders' request, and ultimately the vice president for the marketing department overruled Sanders and requested that Ms. Schneiker remain on the special project.

In the spring of 1993, Sanders gave Ms. Schneiker a low job performance rating for phone production, and Ms. Schneiker again disputed his judgment. The two discussed the evaluation but did not resolve their differences. Dissatisfied

with the evaluation and treatment that she had been receiving from Sanders, Ms. Schneiker filed a complaint against him with the human resource department at Fortis. The Human Resource Manager, Mary Bond, had her staff investigate Ms. Schneiker's complaint. Bond eventually determined that Ms. Schneiker's allegations were without merit.

During the course of that summer, according to her affidavit, Ms. Schneiker began seeing Dr. Wean more often "in an effort to deal with Dana Sanders." R.34 at 5. Ms. Schneiker even applied for other jobs within Fortis in an effort to escape Sanders' supervision. By September 1993, Ms. Schneiker's depression began to take its toll. On September 7, Ms. Schneiker became emotionally overwrought at work and was sent home. A few days later, on September 15, Ms. Schneiker began crying uncontrollably at a staff meeting conducted by Sanders, who told her she could leave the meeting. That same day, Bond asked Ms. Schneiker to submit to an alcohol test because a staff member had smelled alcohol on her breath. Ms. Schneiker reluctantly took the test, and the results were negative. The ordeal of taking the alcohol test, however, increased Ms. Schneiker's emotional trauma that day, and she later was admitted to the hospital because of her condition.

While Ms. Schneiker was still hospitalized, Dr. Wean, Bond, and Sanders met with her to discuss her return to Fortis. The doctor recommended that Ms. Schneiker be removed from Sanders' supervision, and Bond agreed to a temporary transfer while Ms. Schneiker sought a different position within Fortis. Bond formalized the results of that meeting in a letter, which informed Ms. Schneiker that, as of October 4, 1993, she would be transferred to a temporary position and that she should seek permanent employment by applying for vacant positions at Fortis for which she was qualified.

Upon her return, Ms. Schneiker transferred from her job as a Benefit Analyst to her temporary position in Fortis' Long-Term Care Unit, which was located in a different building from where Sanders worked. In this new position, Ms. Schneiker had a new supervisor, Carol Paap. She also retained the same benefits and salary that she had received while working in her previous position, although the job involved duties of a much lower level of responsibility. According to Ms. Schneiker, the transfer from her previous department and away from Sanders made a difference: "Overall, I really believed I was getting better and contributed this to the change in environment." R.34 at 9 (Schneiker Affidavit).

In more ways than one, Bond and others at Fortis tried to help Ms. Schneiker obtain permanent employment at Fortis. Ms. Schneiker was allowed to post for more than one job at a time, a practice not usually allowed at Fortis. The human resource department arranged interviews for Ms. Schneiker, sometimes without requiring Ms. Schneiker to post formally for the position. When it came time for Ms. Schneiker's performance review, Paap ignored what she considered to be poor attendance and purposefully did not give Ms. Schneiker a written warning because she did not want it included in Ms. Schneiker's personnel file.

Even though she did not formally interview for the position, Ms. Schneiker was offered a permanent position as a communications specialist on 3 separate occasions. While this job was at a lower pay grade (by 2 levels) than her previous position, it also had the potential for significant salary increases in the long term. Ms. Schneiker turned the job down each time it was offered because she felt that the salary grade was too low and that she was overqualified for the position. Ms. Schneiker also interviewed for about 12 other jobs, out of about 54 possible jobs available between October 4, 1993, and her termination in July 1994. Of the 12 jobs for which she did interview, Ms. Schneiker failed to secure a permanent position.

On May 24, 1994, Ms. Schneiker received a letter from Fortis that informed her that she would be terminated if she did not obtain a permanent position in the company by July 8, 1994. When Bond was able to verify that Ms. Schneiker had not complied with this request, she terminated Ms. Schneiker's employment.

III

The ADA prohibits employment discrimination against disabled individuals. Specifically, the ADA provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. sec. 12112(a). Because the ADA only covers qualified individuals with disabilities, the burden rests with Ms. Schneiker to prove that she is disabled within the meaning of the statute. See Roth v. Lutheran Gen. Hosp., 57 F.3d

1446, 1453-54 (7th Cir. 1995).

Under the ADA, an individual is disabled if she (1) has "a physical or mental impairment that substantially limits one or more" "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. sec. 12102(2). Ms. Schneiker bases her claim on the first definition/1 and argues that her alcoholism and depression substantially limit a major life activity--her ability to work./2

In order to prove that her impairments substantially limit her ability to work, Ms. Schneiker would have to establish that, because of those impairments, she is "precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton, 119 S. Ct. at 2151. In other words, it would not be enough for Ms. Schneiker to show "an inability to perform a particular job" for Fortis; to overcome Fortis' summary judgment motion, Ms. Schneiker would have to provide this court with some evidence that would create a question of material fact as to whether her impairments "substantially limit employment generally." Skorup, 153 F.3d at 514-15 (quotation marks and citations omitted).

In the district court, Ms. Schneiker asserted that she suffers from 2 disabilities: alcoholism and depression. As for Ms. Schneiker's alleged alcoholism, the district court held that Ms. Schneiker had failed to produce any evidence that she suffered from alcoholism. However, the court did consider Ms. Schneiker's alleged alcoholism "together with [her] allegation that she suffers from depression." R.46 at 31 n.2. In this appeal, Ms. Schneiker argues only that her alcoholism is "an intermittent impairment that is a characteristic manifestation of depression." Appellant's Br. at 14. Because Ms. Schneiker does not contest the district court's finding that she produced insufficient evidence of alcoholism as a separate disability, that argument has been waived. But as the district court correctly did in this case, we shall consider Ms. Schneiker's alleged alcoholism to the extent that it could be an intermittent impairment manifesting her depression. See Haschmann v. Time Warner Entertainment Co., 151 F.3d 591, 599-600 (7th Cir. 1998) (treating episodic "flares," which are characteristic of lupus, as a disability under the ADA); Vande Zande v. Wisconsin Dep't of Admin., 44 F.3d 538, 543-44 (7th Cir. 1995) (holding that pressure ulcers, which were the result of paralysis, were "intermittent impairment[s] that [are] a characteristic manifestation of an admitted disability" and therefore were covered by the ADA).

On the other hand, the district court did conclude that Ms. Schneiker had produced sufficient evidence that she suffers from major depression, and we agree with the court's assessment. The record indicates that Ms. Schneiker was diagnosed as suffering from major depression, that Dr. Wean treated Ms. Schneiker for that depression, and that she was hospitalized on several occasions because of her depression. But we also agree with the district court that Ms. Schneiker has not demonstrated that her depression substantially limits her ability to work or any other major life activity. Instead, the record shows that Ms. Schneiker's inability to work was due, not to her depression, but to her inability to work under Sanders.

In some circumstances, major depression can be a covered disability under the ADA. See 29 C.F.R. sec. 1630.2(h)(2) (defining physical or mental impairment to include "[a]ny mental or psychological disorder"); EEOC Enforcement Guidance: The Americans with Disabilities Act and Psychiatric Disabilities at 2, 8 FEP Manual (BNA) 405:7462 (1997) (including major depression as an example of a "mental impairment" under the ADA)./3 It is not enough, however, for Ms. Schneiker to demonstrate that she suffers from depression. To get past summary judgment, she must also demonstrate in the record that her depression substantially limits her ability to perform a major life activity. In every case our inquiry is individualized. See, e.g., Patterson, 150 F.3d at 726; Baert, 149 F.3d at 631. On this record, we cannot say that Ms. Schneiker's depression is a substantial limitation on any of her major life activities.

Ms. Schneiker argues that her depression is triggered by stress, not by working under Sanders, and that her depression substantially limits her ability to work. But she has failed to produce any evidence that her inability to work in "stressful situations" precludes her from a class of jobs or a wide range of jobs. To satisfy her burden of proof, mild as it may be, Ms. Schneiker needed to point to those job requirements that were problematic in light of her depression. See Skorup, 153 F.3d at 515.

The record, even when viewed in the light most favorable to Ms. Schneiker, only shows that she cannot work when supervised by Sanders. According to Ms. Schneiker, she was visiting Dr. Wean during the summer of 1993 in order to "deal with" Sanders, not her job. And when Ms. Schneiker, Dr. Wean, Bond, and Sanders met to discuss Ms. Schneiker's return to Fortis after her last hospitalization, Dr. Wean recommended that Ms.

Schneiker should not be supervised by Sanders. The doctor did not recommend that Ms. Schneiker be removed from her position. Once Ms. Schneiker moved to her temporary position in the Long-Term Care Unit, her condition improved. Indeed, once she moved to her temporary position and away from Sanders, Ms. Schneiker does not allege that her depression interfered with her job performance. That Ms. Schneiker's problem was with Sanders, and not with her job, is only reinforced by Ms. Schneiker's complaint: "Plaintiff, with reasonable accommodations of . . . her complete removal from a supervisor whose supervisory techniques were the known cause of the stress she experienced . . . would have been able to perform the essential functions of her job as a Benefit Analyst in defendant's Individual Medical Benefits Department." R.1 at 2 para. 8. Dr. Wean also testified to this effect.

In the end, we agree with the district court that this case is on par with Weiler v. Household Finance Corp., 101 F.3d 519 (7th Cir. 1996). In Weiler, this court was confronted with an ADA claim from an employee who charged that, because of job-related stress which induced depression, anxiety and a TMJ disorder, she could not work for a certain supervisor. See id. at 524. The employee in that case had taken leave from her job but argued that she could return only if she did not have to work under that supervisor. See id. at 522, 524. We held in Weiler that the employee was not disabled within the meaning of the ADA because "if [she] can do the same job for another supervisor, she can do the job, and does not qualify under the ADA." Id. at 525. In our case, the record before us presents essentially the same scenario: Ms. Schneiker simply cannot work when she is supervised by Sanders. Standing alone, a personality conflict between an employee and a supervisor--even one that triggers the employee's depression--is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor. See id. at 524-25; cf. Palmer v. Circuit Court of Cook County, 117 F.3d 351, 352 (7th Cir. 1997) (observing that "if a personality conflict triggers a serious mental illness that is in turn disabling," and thus makes the employee incapable of working, the employee may have a disabling mental illness within the meaning of the ADA), cert. denied, 118 S. Ct. 893 (1998).

The record in our case, even when viewed in the light most favorable to Ms. Schneiker, contains no evidence that she was precluded from working at Fortis or from a host of other jobs as a result of her depression. As a result, Ms. Schneiker's claim falters in this court because

she has not demonstrated that she is disabled as that term is used in the ADA. Because we hold that Ms. Schneiker is not disabled, we need not address the remaining aspects of Ms. Schneiker's failure to accommodate claim. See Leisen, 153 F.3d at 807; Patterson, 150 F.3d at 726.

Finally, we must also briefly address Ms. Schneiker's assertion that Fortis' job posting system has a disparate impact on its disabled employees. The district court held that, because Ms. Schneiker is not disabled as that term is defined by the ADA, she is not a member of the protected class and therefore is not a proper disparate-impact plaintiff. The ADA protects only those employees who are "qualified individual[s] with a disability," 42 U.S.C. sec. 12112(a); therefore, Ms. Schneiker would also have to be "disabled" in order to bring a disparate impact claim under the ADA. See Weigel, 122 F.3d at 465 (noting that a plaintiff must be disabled under the ADA in order to make out a prima facie case in the related context of a disparate treatment claim). We have already determined that she is not disabled within the meaning of the ADA, and so we hold that the district court was correct to grant summary judgment for Fortis on Ms. Schneiker's disparate impact claim.

Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

/1 In her filings in the district court, Ms. Schneiker had alluded to the possibility that Sanders "perceived" her as disabled. According to Ms. Schneiker, Sanders, her supervisor, said to her at one point that she "should go on disability and that no one would object." R.35 at 5. Ms. Schneiker has not pressed this argument before this court; therefore, we shall not address it. See Duncan v. Wisconsin Dep't of Health & Family Servs., 166 F.3d 930, 934 (7th Cir. 1999) (stating that for an argument to be considered by the court of appeals, the party must develop that argument in its brief).

/2 The Supreme Court recently expressed some concern over whether "working" should be considered a "major life activity" under the ADA, see Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2151 (1999) (noting that the Court had some "conceptual difficulty" with defining work as a major life activity for ADA purposes because of the circularity of the reasoning); nevertheless, like the Court in Sutton, we need not decide

whether "working" is a major life activity under the ADA because in our case Ms. Schneiker and Fortis do not dispute this point and because, as we discuss below, Ms. Schneiker has not demonstrated to this court that her alcoholism and depression substantially limit her ability to work. See Sutton, 119 S. Ct. at 2151. We do note that previous decisions from this circuit have treated "working" as a major life activity. See, e.g., Skorup, 153 F.3d at 514-15; Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 725-26 (7th Cir. 1998); Baert v. Euclid Beverage, Ltd., 149 F.3d 626, 630 (7th Cir. 1998); Weiler v. Household Fin. Corp., 101 F.3d 519, 524-25 (7th Cir. 1996); see also 29 C.F.R. sec. 1630.2(i) (defining the phrase "major life activity" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

/3 This circuit has not yet had occasion to hold that depression is a disability covered by the ADA. In our cases in which the plaintiff alleged a depression disability, our holdings rested on other grounds, such as whether the plaintiffs were "qualified" individuals, and not on whether they were "disabled" under the ADA. See, e.g., Corder, 162 F.3d at 927-28 (holding that the plaintiff, who suffered from depression, was not qualified under the ADA because of her irregular attendance); Leisen v. City of Shelbyville, 153 F.3d 805, 808 (7th Cir. 1998) (holding that summary judgment for the employer was proper because the employee, who suffered from depression, had not produced sufficient evidence that she was qualified for the job); Weigel v. Target Stores, 122 F.3d 461, 465, 469 (7th Cir. 1997) (affirming summary judgment for the employer where the employer conceded the plaintiff's depression qualified as a disability but where the plaintiff had not shown that she was qualified for the job).