**Rhonda R. CASEY, Plaintiff–Appellant,**

**v.**

**KWIK TRIP, INC., Defendant–Appellee.**

**No. 02–4360.**

United States Court of Appeals,
Seventh Circuit.

Argued May 27, 2003.

Decided Oct. 19, 2004.

**216**

Peter M. Reinhardt, Menomonie, WI, for Plaintiff–Appellant.

Dan J. Gendreau, John D. Thompson, Rider, Bennett, Egan & Arundel, Minneapolis, MN, for Defendant–Appellee.

Before BAUER, POSNER, and COFFEY, Circuit Judges.

## ORDER

Rhonda Casey, at the time of her employment with Kwik Trip, Inc., of New Richmond, Wisconsin, was suffering from carpal tunnel syndrome and Raynaud's disease.[1] After some three years with Kwik Trip acting in the capacity of a retail clerk, she was terminated for being insubordinate after she disregarded her employer's order to stop talking with coworkers and customers about babies or having been raped. Casey thereafter filed suit against her employer pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, alleging that her employer discriminated against her because she is disabled. She also alleged that Kwik Trip failed to provide her with reasonable accommodations for her alleged disability. After hearing arguments and upon review, the district court granted summary judgment in favor of her employer, Kwik Trip, finding that Casey failed to establish that she was disabled within the meaning of the ADA. Casey appeals. We affirm.

## I. Background

Kwik Trip operates a chain of gas station/convenience stores in the upper Midwest. Casey began working at Kwik Trip's New Richmond, Wisconsin, store as a full-time retail clerk on June 30, 1998. When she was hired, Casey told Kwik Trip that she was suffering from carpal tunnel syndrome in her right hand. Casey also informed her employer that her physicians had placed her under certain work restrictions because of her carpal tunnel: 1) she could lift up to 50 pounds but only 33 percent of the time if careful of repetitive

---

**1.** Raynaud's disease is vascular disorder that affects the hands and feet primarily, and causes discoloration of the skin, which is sometimes accompanied by a pricking or tingling sensation and, less commonly, pain. These symptoms are brought on by cold or emotional stimuli and relieved by heat. *Dorland's Illustrated Medical Dictionary* 920, 1324, 1371, 1534 (29th ed. 2000).

motion;[2] 2) she could only reach from waist to shoulder height; 3) she could only work 40–hour weeks; and 4) she needed regular ten-minute breaks. In January 2001 Casey also informed Kwik Trip that she had Raynaud's disease, and could no longer perform any duties outside the store in the winter, because the cold temperature would cause her Raynaud's disease to flare up.

Despite her work restrictions, Casey performed her job well enough to receive positive performance appraisals and pay raises during her first two years with Kwik Trip. In January 2001, however, Casey was suspended for three days because her supervisor, Dwayne Maier, had observed her counting money in front of customers and giving change to people who were not making a purchase, both violations of store policies. At the same time, Casey was warned that any further misconduct would result in her discharge. Additionally, Casey was advised that she would have to obtain an updated set of work restrictions from her physicians before she would be allowed to return to work, as Maier was concerned that the restriction on overhead lifting would prevent her from reaching above her head in order that she might stock and dispense cigarettes, a task that store clerks are usually required to perform. According to Casey, she was told that if she was unable to lift anything over her head, she would no longer be able to work as a cashier at Kwik Trip.

Casey failed to provide Kwik Trip with an updated set of work restrictions before the expiration of her suspension period on January 27, 2001, and thus was not allowed to return to work. Instead, on February 9, 2001, Kwik Trip mailed Casey a list of the requirements for her job, and asked her to have her physician review the job requirements and provide Kwik Trip with an all-inclusive list of the specific restrictions he suggested for Casey as they related to the job specifications. After reviewing the list, her physician determined that Casey should be restricted only from lifting more than 20 pounds to waist level and that she needed to avoid freezing temperatures, but that she could perform all other physical functions listed.

Almost two months later, on April 3, 2001, Kwik Trip discharged Casey because of her repeated acts of insubordination. According to Kwik Trip, besides general incidents of exhibiting a poor attitude, Casey had ignored Maier's instructions not to talk with co-workers or customers about babies or about having been raped, as these discussions were upsetting not only co-workers but customers as well. Six weeks later, Casey commenced work at a "Super Stop" in Somerset, Wisconsin, which is a convenience store/gas station similar to Kwik Trip, and has continued to be employed there as a full-time cashier, performing a job identical to the job she held at Kwik Trip. On May 14, 2002, Casey filed suit against Kwik Trip. On November 4, 2002, Kwik Trip moved for summary judgment, which the court granted. Casey appeals.

On appeal, Casey argues that the district court erred in determining that she was not disabled within the parameters of the ADA. Casey contends that she presented sufficient evidence to demonstrate that her two impairments, carpal tunnel syndrome and Raynaud's disease, when considered in combination with each other, substantially limit her in the major life

---

**2.** We find it difficult to understand how an employer could be expected to monitor its compliance with a work restriction that is so vague in its description and unclear in its parameters.

activities of performing manual tasks and working, thus making her disabled as defined in the ADA's rules and regulations. In the alternative, Casey argues that she is disabled within the meaning of the ADA because Kwik Trip "regarded her" as disabled.[3] We disagree.

## II. Analysis

We review *de novo* the district court's grant of summary judgment to Kwik Trip. *Sphere Drake Ins. Ltd. v. American Gen. Life Ins. Co.*, 376 F.3d 664, 668 (7th Cir. 2004). To establish a claim for either disparate treatment or a failure to accommodate under the ADA, Casey must, as a threshold matter, demonstrate that she is disabled as that term is defined and codified in the ADA's rules and regulations. *Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir.2002). Casey has a disability under the ADA only if she: 1) has a physical or mental impairment that substantially limits one or more of her major life activities; 2) has a record of such an impairment; or 3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); *Nawrot*, 277 F.3d at 903.

### A. Disabled in a "Major Life Activity"

■ Casey argues that-at the time of her suspension and subsequent termination by Kwik Trip-her dual ailments of carpal tunnel syndrome and Raynaud's disease[4] made her disabled under the ADA because they, in combination, substantially limited her ability: 1) to "perform manual tasks" such as knitting, crocheting, sewing, braiding her own hair, and doing household chores; and 2) to work in a "broad range of jobs in various classes" in the Northwest Wisconsin job market. The ADA regulations list "manual tasks" and "working" as major life activities-both of the activities that Casey alleges that she is substantially limited from performing because of her carpal tunnel and Raynaud's disease. *See* 29 C.F.R. § 1630.2(i). However, an individual can only be found to be "substantially limited" in performance of a major life activity, and thus disabled as defined by the ADA, if she demonstrates that, when "compar[ed] to ... the average person in the general population," she cannot perform or is "[s]ignificantly restricted as to the condition, manner, or duration under which [she] can perform" the activity. 29 C.F.R. § 1630.2(j)(1) (emphasis added).

### 1. The Major Life Activity of Performing Manual Tasks

We address Casey's first argument that she is disabled in the major life activity of "performing manual tasks," such as knitting, crocheting, sewing, braiding her own hair, and doing household chores. When the major life activity under consideration is that of performing manual tasks, "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives," such as "household chores, bathing, and brushing one's teeth." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200, 202, 122 S.Ct. 681, 151 L.Ed.2d 615

---

**3.** Casey also argues that she is disabled because she has a record of suffering from a qualifying impairment. The district court did not address this claim after noting that Casey conceded in her response to Kwik Trip's motion for summary judgment that she did not have a record of an impairment. We agree with the district that this factual concession by Casey removes this issue from her suit. Casey's concession "was in the nature of a judicial admission, and such an admission has the effect of withdrawing an issue from controversy." *Selimi v. INS*, 312 F.3d 854, 860 (7th Cir.2002)

**4.** The parties agree that both of Casey's afflictions, carpal tunnel syndrome and Raynaud's disease, are recognized physical impairments under the ADA.

(2002) (emphasis added). Casey must demonstrate that her afflictions "prevent[ ] or severely restrict[ ][her] from doing" important tasks, tasks that either individually or in the aggregate qualify as a "major life activity" in order for her to be qualified as disabled under the ADA. *Id.* at 197–98 (emphasis added).

Casey claims that her physical impairments cause her to experience pain, swelling, numbness and weakness in her right hand, symptoms that *prevent her* from knitting, crocheting, sewing, or braiding her own hair. These activities, however, viewed either individually or in the aggregate, according to present case law are not considered to be of central importance to *most peoples' daily lives. See Toyota,* 534 U.S. at 202 (plaintiff's limitations on sweeping, dancing, self-dressing, playing with her children, gardening and driving are insufficient to establish that she has a manual task disability). Thus Casey's inability to perform these enumerated tasks does not make her substantially limited in a major life activity. *See id.*

Casey also claims that (because of her infirmities) she is *severely restricted* in her ability to perform household chores such as draining pots, scrubbing a floor, vacuuming, painting, making a bed, and shoveling snow, and other activities such as driving, gripping, writing, and holding small objects such as jewelry and keys. However, she admits that she *can perform* these tasks if she utilizes simple, common-sense, and efficient adaptative measures. For

instance, Casey stated that when she relies on her left hand or uses both hands she can drain pots, use tools, as well as grip and manipulate small objects (such as jewelry and keys). Casey also makes use of equipment, such as an electric can opener or a mop, to help her perform some household chores, and her husband helps her with chores such as painting and shoveling snow. When writing, she frequently takes breaks. As for her difficulty driving, Casey admits all she needs to help her perform this task is to have a vehicle with an automatic transmission, and the vast majority of vehicles today are equipped with an automatic transmission rather than a manual-shift transmission. Thus Casey can and does employ adaptive measures to negate the extent to which her afflictions limit her ability to perform these manual tasks, and impairments that are corrected by mitigating measures do not "substantially limi[t] a major life activity." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Nawrot,* 277 F.3d at 904. We conclude that Casey's infirmities do not substantially limit her ability to carry out one of the major activities of life, performing manual tasks.

**2. The Major Life Activity of Working**

Casey next argues that she is disabled in the major life activity of working.[5] In order to establish that she is substantially limited from working, Casey must demonstrate that she is "significantly restricted

---

**5.** We assume, for the sake of argument only, that working is a major life activity. *See Peters v. City of Mauston,* 311 F.3d 835, 843 (7th Cir.2002); *Amadio v. Ford Motor Co.,* 238 F.3d 919, 925 (7th Cir.2001); *Moore v. J.B. Hunt Transp., Inc.,* 221 F.3d 944, 953 (7th Cir.2000); *Schneiker v. Fortis Ins. Co.,* 200 F.3d 1055, 1060 n. 2 (7th Cir.2000); *DePaoli v. Abbott Labs.,* 140 F.3d 668, 672 (7th Cir. 1998). To date the Supreme Court has not expressly decided whether "working" should

be considered a "major life activity" under the ADA. *See Sutton,* 527 U.S. at 492; *Toyota,* 534 U.S. at 200. And, although Kwik Trip urges us to do so, we need not and will not confront the issue directly in this case, because we conclude that, under the present law, Casey has failed to raise a serious question as to whether her ailments substantially limit her ability to work. *See Schneiker,* 200 F.3d at 1060 n. 2.

[from performing] either a class of jobs or a broad range of jobs in various classes." *Sutton,* 527 U.S. at 491 (citing 29 C.F.R. § 1630.2(j)(3)(i). Casey contends that her impairments substantially restrict her ability to perform a "broad range of jobs in various classes" in the job market in Northwest Wisconsin: assembly and production line worker, machine operator, delivery driver, cook, waitress, packager, custodian or housekeeper. However, in order to demonstrate that she is restricted from performing a "broad range of jobs in various classes," Casey must demonstrate, at a minimum, that she is restricted in performing her previous job-"the job from which [she alleged she] was disqualified" or terminated because of her afflictions-that of a retail clerk/cashier at a convenience store/gas station. *EEOC v. Rockwell Int'l Corp.,* 243 F.3d 1012, 1017 (7th Cir. 2001) (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(A), (C))). And, of course, Casey has been unable to make this showing because it is undisputed that she has continued to work as a cashier at a convenience store/gas station (at the "Super Stop"), doing the same job and the performing the same tasks as she did when she was employed with Kwik Trip. Indeed, the report Casey submitted by her vocational expert concluded that she was and is still able to perform cashier/retail clerk jobs like the one she now holds. Thus Casey cannot demonstrate that she is substantially limited, or severely restricted, in her ability to work. *Peters,* 311 F.3d at 843; *Moore,* 221 F.3d at 953; *Patterson v. Chicago Ass'n for Retarded Citizens,* 150 F.3d 719, 726 (7th Cir.1998). Accordingly, we agree with the district court that Casey failed to establish that her impairments substantially limited her ability to perform the major life activity of working.

### B.  Regarded as Disabled

■ Casey next argues that she is disabled under the ADA because Kwik Trip *regarded her* as having "a physical or mental impairment that substantially limit[ed] one or more of [her] major life activities." 42 U.S.C. § 12102(2)(A), (C). In order to prevail on this claim, Casey must demonstrate that Kwik Trip incorrectly speculated that Casey's impairments were "grave enough" to be classified as a disability under the ADA; otherwise, any misconception by Kwik Trip concerning the limitations caused by her ailments falls short of violating the ADA. *Tockes v. Air–Land Transp. Servs., Inc.,* 343 F.3d 895, 896 (7th Cir.2003); *see also Sutton,* 527 U.S. at 489; *Mack v. Great Dane Trailers,* 308 F.3d 776, 780 (7th Cir.2002). Casey contends that her supervisors at Kwik Trip made telling comments that demonstrate Kwik Trip regarded her as being substantially limited in the major life activities of: 1) working; and 2) performing manual tasks that are necessary to life in general. Specifically, Casey alleges that Maier referred to her as "handicap[ped]," and told her that, because her work restrictions "limited her from ... doing almost everything in the store," she should get them changed or she would lose her job.[6]

We agree with Casey that these comments, if made, were at a minimum imprudent, insensitive, an exercise in poor judgment, and possibly might be interpreted as demonstrating that Kwik Trip considered Casey a liability as an employee at its store. However, even if Kwik Trip thought that Casey's work restrictions disqualified her from employment at its store, this does not necessarily mean that Kwik Trip *regarded* her limitations as "grave enough" to substantially limit her ability to

---

6.  Casey points to a number of other comments that Maier, and another supervisor, Terry Hanley made. These comments, how-

ever, were directed towards Casey's perceived attitude problem and did not pertain to her alleged disability.

perform manual tasks or to be employed in a "broad range of jobs in various classes" in the Northwest Wisconsin job market, as Casey alleges. First, the comments do not speak at all to her ability to perform manual tasks; they concern only Kwik Trip's perceptions about her ability to work, thus Casey has failed to demonstrate, much less establish, that Kwik Trip regarded her as substantially limited in the performance of manual tasks. *See Tockes*, 343 F.3d at 896; *Mack*, 308 F.3d at 782. Second, even though the comments did concern Kwik Trip's perceptions of Casey's inability to work, they fail to demonstrate that Kwik Trip believed she was incapable of working in a "class of jobs" or in a "broad range of jobs in various classes," as is required to meet the definition of disabled under the ADA. *See Peters*, 311 F.3d at 843; *Rockwell*, 243 F.3d at 1017. Rather, the comments suggest only that Kwik Trip believed she may have been incapable of working as a cashier/retail clerk at its store, which does not equate to a mistaken belief that Casey's infirmities were "grave enough" to be classified as a disability under the ADA. *Tockes*, 343 F.3d at 896; *Peters*, 311 F.3d at 843; *Moore*, 221 F.3d at 954–55; *see also Sutton*, 527 U.S. at 490–91. Additionally, we note that, even with the restrictions she was given by her physician, Casey was capable of performing the exact same tasks at Kwik Trip which she now is called upon and does perform in her current position as a cashier/retail clerk at the Super Stop, further underscoring the fact that Kwik Trip's concerns about her ability to work were specific only to its store, and did not correlate to a belief she was unable to work in a "broad range of jobs in various classes" in the Northwestern Wisconsin job market. *See Peters*, 311 F.3d at 845. We conclude that Casey failed to present sufficient evidence that Kwik Trip regarded her as disabled within the meaning of the ADA.

### III. Conclusion

We hold that the district court's finding that Casey failed to meet her threshold burden of presenting sufficient facts from which a rational jury could find that she was "disabled," as that term is defined in the ADA, was proper.[7] Additionally, we note that, even if Casey were able to demonstrate that she is disabled under the ADA, she has failed to offer any evidence that would create a disputed issue of fact as to whether Kwik Trip had a discriminatory motive when it terminated her or otherwise adversely affected her employment.[8] Casey had a troubled employment record with her employer. Kwik Trip stated that it suspended Casey for violating store policies after she counted money in front of customers and gave change to people who were not making a purchase, and later discharged her for being insubordinate after she disregarded her employer's order to stop talking with co-workers and customers about babies or having been raped. Casey does not argue that Kwik Trip's offered reasons for suspending and terminating her are not legitimate or bona fide grounds for taking those adverse employment actions. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir.2000). Rather, Casey asserts-without providing any support for her contention-that Kwik Trip was motivated to suspend and terminate her not because she violated store policies and was insubordinate, but instead because of her alleged disability.

---

7. Because we conclude that Casey is not disabled within the meaning of the ADA, we do not address whether Kwik Trip failed to reasonably accommodated her alleged disability. *See Schneiker*, 200 F.3d at 1062.

8. Casey also alleges that Kwik Trip demoted her because of her alleged disability, but provides no evidence to show that Kwik Trip adjusted her job responsibilities in any manner that could be viewed as a "demotion."

However, Casey's inability to present any evidence to support her contention that Kwik Trip suspended and terminated her *because of* her alleged disability rather than because she was an unsatisfactory employee is fatal to her claim. As Casey bears the ultimate burden of proof to show that Kwik Trip engaged in discriminatory conduct, *see United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), she cannot create a triable dispute of fact simply by making the unsupported allegation that Kwik Trip is "not worthy of belief. That would [be] a no-evidence case, and such a case [Casey] must lose, because [she] ha[s] the burden of proof." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir.2002) (citing *EEOC v. G–K–G, Inc.*, 39 F.3d 740, 746 (7th Cir.1994)). Accordingly, the court's grant of summary judgment in favor of Kwik Trip is AFFIRMED.