10-1590-cv
Serricchio v. Wachovia Securities, LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: June 20, 2011                                      Decided: September 13, 2011)

Docket No. 10-1590-cv

_____

MICHAEL SERRICCHIO,

*Plaintiff-Appellee*,

-v-

WACHOVIA SECURITIES LLC,

*Defendant-Appellant*,

PRUDENTIAL SECURITIES, INC.,

*Defendant*.*

_____

Before: POOLER and WESLEY, *Circuit Judges*, KOELTL, *District Judge*.**

Appeal from three orders of the United States District Court for the District of

Connecticut (Arterton, *J.*), issued during the pendency of an action commenced under the

Uniformed Services Employment and Reemployment Rights Act ("USERRA"), by Appellee

Michael Serricchio, a member of the United States Air Force Reserve.

The first order denied summary judgment to Appellant Wachovia Securities LLC on the

_____

* The Clerk of the Court is directed to conform the caption in accordance herewith.

** Honorable John G. Koeltl of the United States District Court for the Southern District
of New York, sitting by designation.

ground that Serricchio's request for reinstatement to his prior employment position following a period of active military duty was adequate as a matter of law under USERRA. *See Serricchio v. Wachovia Sec., LLC*, 556 F. Supp. 2d 99 (D. Conn. 2008). The second order was issued following a bench trial on damages, after a separate and prior proceeding in which a jury found Wachovia liable for violating USERRA by failing to reemploy Serricchio "promptly" in a position of like "seniority, status and pay" as required by the statute. *See Serricchio v. Wachovia Sec., LLC*, 606 F. Supp. 2d 256 (D. Conn. 2009). That order is appealed only insofar as the district court (a) found that Wachovia had willfully violated USERRA and thus awarded liquidated damages in an amount equal to the backpay award, which was $389,453, and (b) authorized equitable relief distinct from the backpay award in the form of ordering Wachovia to reinstate Serricchio to a financial advisor position with a fixed salary for three months while he regained his broker's licenses, to be followed by a nine-month period in which Serricchio would receive a fixed "draw" to be offset by any commissions he earned during that time, as he rebuilt his book of business. The third order denied, in relevant part, Wachovia's post-trial motions for judgment as a matter of law, or in the alternative, for a new trial. *See Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237 (D. Conn. 2010).

Because we find no error in the district court's thoughtful and well-reasoned opinions, we affirm.

**AFFIRMED**.

—————————————

DAVID S. GOLUB, Jonathan M. Levine, Marilyn J. Ramos, Craig N. Yankwitt, Silver, Golub & Teitell LLP, Stamford, CT, *for Plaintiff-Appellee*.

2

DAVID BENNET ROSS, Devjani Mishra, Brian D. Murphy, Seyfarth Shaw LLP, New York, NY, *for Defendant-Appellant*.

M. PATRICIA SMITH, Solicitor of Labor, Office of the Solicitor, United States Department of Labor, Thomas E. Perez, Assistant Attorney General, United States Department of Justice, Dennis J. Dimsey, Erin Aslan, Attorneys, Appellate Section, Civil Rights Division, Untied States Department of Justice, Washington, D.C., *for Amicus Curiae, Secretary of the United States Department of Labor*.

POOLER, *Circuit Judge*:

This is an appeal from three orders of the United States District Court for the District of Connecticut (Arterton, *J.*): (1) denying summary judgment to Appellant Wachovia Securities LLC ("Wachovia")[1] on the ground that Appellee Michael Serricchio had adequately requested reinstatement to his prior employment position following a period of active military duty; (2) awarding liquidated damages, in an amount equal to the award of backpay, which was $389,453, and granting equitable relief to Serricchio following a bench trial on damages after a jury found Wachovia liable for violating the Uniformed Services Employment and Reemployment Rights Act ("USERRA") in failing to reemploy Serricchio "promptly" to a position of like "seniority, status and pay" following his military service; and (3) denying Wachovia's motion for judgment as a matter of law, or, in the alternative, for a new trial.[2]

Michael Serricchio, a member of the United States Air Force Reserve, was employed by

---

[1] Serricchio commenced this action against both Prudential Securities LLC and Wachovia, which merged with Prudential in July 2003. The post-merger entity was known as Wachovia, and we therefore refer to Serricchio's employer as Wachovia throughout.

[2] Serricchio filed a cross-appeal in connection with this matter, *see* Case No. 10-1892-cv, that was later withdrawn.

Wachovia as a financial advisor. In the wake of September 11, 2001, Serricchio was called to active duty. After serving his country, Serricchio requested reemployment at Wachovia, as he was entitled to do under USERRA. Wachovia failed to reemploy Serricchio for a term of nearly four months after he requested reinstatement and ultimately offered Serricchio a reemployment position that set his compensation at the commission rate he had received prior to activation but without regard to the sizable book of business he had established in the months before his military service. A jury found that Wachovia's actions violated USERRA, because the bank failed to reemploy Serricchio "promptly" and because the reemployment position offered to Serricchio was not of equivalent "seniority, status and pay" to his pre-service position. The district court held a separate bench trial on damages, after which it ordered Wachovia to reinstate Serricchio with a fixed salary for three months during which time he was to undergo training to regain his broker's licenses. The district court later denied Wachovia's post-trial motions, and Wachovia appealed.

Although this case presents a number of issues of first impression for this and other courts, two predominate. First, we must decide whether USERRA requires an employer, who compensated a servicemember on a commission basis prior to his activation, to consider the size of the servicemember's pre-activation book of business in determining the appropriate post-service reemployment position. USERRA guarantees servicemembers a position of like "seniority, status, and pay" upon their return from active duty. *See* 38 U.S.C. § 4313(a)(2)(A). Is a reemployment position that provides the same commission rate (i.e., the same fixed percentage on accounts serviced), without regard to the volume or size of the accounts in the servicemember's pre-activation book of business, sufficient to satisfy USERRA, as a matter of

4

law?  The district court concluded that it was not, and the Secretary of the United States Department of Labor, charged with promulgating regulations under the statute, *see* 20 C.F.R. § 1002.2, has submitted a letter amicus curiae advancing the same conclusion.  For reasons discussed in full detail below, we agree.

Second, we must decide whether it was an abuse of discretion for the district court to award Serricchio reinstatement to his prior financial advisor position with a fixed salary, even though his pre-service compensation was wholly commission-based.  On this point, we note that where, as here, a jury has returned a verdict in favor of the servicemember, the statute authorizes a district court to use its "*full* equity powers . . . to vindicate fully the rights of" veterans.  38 U.S.C. § 4323(e) (emphasis added).  Wachovia has identified no evidence overlooked, or legal precedent misinterpreted, that would lead us to the conclusion that the district court abused its discretion in fashioning the terms of Serricchio's reinstatement.

Accordingly, we affirm the orders of the district court in their entirety.

## I

The Uniformed Services Employment and Reemployment Rights Act ("USERRA") is the "latest in a series of laws protecting veterans' employment and reemployment rights going back to the Selective Training and Service Act of 1940."  20 C.F.R. § 1002.2.  USERRA's immediate predecessor, which was enacted as part of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, was commonly referred to as the Veterans' Reemployment Rights Act.  *See id.*  In enacting USERRA, Congress made clear that the statute should be thought of as an extension of existing law—not an entirely new piece of legislation supplanting the body of case law that had developed around veterans' rights.  *See id.* (noting that "federal laws protecting veterans'

5

employment and reemployment rights for the past fifty years ha[ve] been successful and that the large body of case law that ha[s] developed under those statutes remain[s] in full force and effect, to the extent it is consistent with USERRA"). The purpose of USERRA is to encourage military service "by eliminating or minimizing the disadvantages to civilian careers"; "to minimize the disruption to the lives" of servicemembers and their employers "by providing for the prompt reemployment" of servicemembers; and "to prohibit discrimination" against servicemembers. 38 U.S.C. § 4301(a).

USERRA provides in relevant part that servicemembers called away to military service "shall be *promptly* reemployed" by their former employers upon completion of a period of service in the armed forces. 38 U.S.C. § 4313(a) (emphasis added). In order for this guarantee to apply, the servicemember must "notify the employer . . . of the person's intent to return to a position of employment with such employer . . . by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service." 38 U.S.C. § 4312(e)(1)(D).

The Supreme Court has explained that reemployment protections for servicemembers are "to be liberally construed for the benefit of those who left private life to serve their country . . . ." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (discussing the Selective Training and Service Act of 1940). Consistent with this directive, we have held that where a returning servicemember's application for reinstatement puts the employer "on ample notice of his claim" to reemployment, any "technical failure[s]" in the form of the application will not prevent a rehiring mandate from binding the employer. *Martin v. Roosevelt Hosp.*, 426 F.2d 155, 159 (2d Cir. 1970); *accord* 20 C.F.R. § 1002.118 ("An application for reemployment

6

need not follow any particular format.").  Indeed, the regulations provide that an "employee is permitted but not required to identify a particular reemployment position in which he or she is interested."  20 C.F.R. § 1002.118.

Section 4316(a) of USERRA entitles a returning servicemember to "the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services *plus* the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."  38 U.S.C. § 4316(a) (emphasis added); 38 U.S.C. § 4313(a)(2)(A) (stating that a servicemember whose period in service exceeds 90 days is entitled to reemployment "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform").  USERRA's regulations explain that this means that "[a]s a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service."  20 C.F.R. § 1002.191.  This position is referred to as the "escalator position."  *Id.*  The "escalator position" may require that the returning servicemember be promoted as part of the reemployment package.  *Id.*  It can also lead to demotion or transfer, depending upon any intervening events during the servicemember's period of active duty.  *Id.*

Setting aside intervening circumstances that would justify a downward departure in a returning servicemember's reemployment position, USERRA makes clear that the critical question is whether the reemployment position offered—if not the same job the servicemember

7

would have had but for the period of service—is of "like seniority, status and pay" to that position. 38 U.S.C. § 4313(a)(2)(A). In determining whether the position is of similar "status," an employer can consider the employee's "opportunities for advancement, general working conditions, job location, shift assignment, rank, responsibility, and geographical location." 20 C.F.R. § 1002.193(a). The regulations further provide that regardless of whether a servicemember is employed in the "pre-service position," "another position" or in the "escalator position," the "rate of pay must be determined by taking into account any pay increases, differentials, step increases, merit increases, or periodic increases that the employee would have attained with reasonable certainty had he or she remained continuously employed during the period of service." 20 C.F.R. §§ 1002.236(a)&(b).

Once a violation of USERRA has been found, the statute provides that "[t]he court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e).

## II

### A

Michael Serricchio, an Air Force reservist, was employed as a financial advisor at Wachovia in its Stamford, Connecticut office. During the 11 months prior to his activation, Serricchio opened more than 130 client accounts, and, together with his partner, Joseph Zinicola, was servicing more than $9.4 million in assets. Because some of Serricchio's accounts were jointly administered with partners, including Zinicola, the actual share of the assets under his management was closer to $4.1 million. Serricchio's accounts generated more than $12,000 in

8

monthly gross revenues, and Serricchio was earning more than $75,000 in annualized net commissions.

Serricchio was called to active duty in the wake of September 11, 2001, at which point Zinicola assumed responsibility for servicing Serricchio's transactional clients. At trial, Serricchio argued that Lawrence Meyers, a First Vice President of the Westport branch of the bank, was hostile to the arrangement between Serricchio and Zinicola, and took certain steps to cripple Zinicola's ability to manage Serricchio's accounts. Wachovia argued that the actions identified by Serricchio were really part of a firm-wide transition away from commission-based transactions, toward a fee-based business model. As part of this move, Wachovia created a "national call center" that was designed to handle accounts with balances of $25,000 or less. As of the date when Serricchio was activated, he and Zinicola were responsible for 142 accounts that were eligible to be sent to the call center.

During Serricchio's period of active duty, he and Zinicola agreed that Zinicola would partner with another financial advisor, Frank Murgalo, who would assist in managing Serricchio's accounts. Zinicola, however, was terminated on April 13, 2003, for misconduct relating to a compliance violation. Once he obtained new employment, he took three of the largest accounts with him to his new employer. These accounts were among those he managed with Serricchio. The remaining accounts were assigned to Murgalo, but he resigned and joined a competitor firm less than a month after Zinicola's departure. Following Murgalo's departure, Serricchio's remaining accounts were assigned to various advisors in the branch.

**B**

Wachovia's military leave policy, which governed Serricchio's absence and eligibility

9

for reemployment, mirrors USERRA's statutory language. It provides in relevant part that an employee who takes military leave is "eligible for reemployment in the job [he] would have had if [he] had not been absent for military service, with the same seniority, pay and benefits." Wachovia argues that this policy, and by extension USERRA, "provides [only] that an advisor who takes military leave will be returned to work at the same commission scale that he worked at prior to the leave, along with an initial monthly draw." That is, Wachovia argues that its obligation to a returning servicemember employed in a straight commission job is only to provide the same commission structure, without reference to the broker's prior book of business, upon the servicemember's return from active duty.

## C

Serricchio was honorably discharged in October 2003, at which point he consulted with an attorney regarding his rights under USERRA. He then sent a letter to Wachovia, through his attorney, dated December 1, 2003, requesting, among other things, reinstatement. The letter stated that Serricchio's "ability to resume his position and regain his prior earnings level ha[d] been severely impaired" by Wachovia's actions during his absence, which caused Serricchio to "face[ ] immediate and long-term career damage[ ]." The letter further requested that the matter be forwarded to Wachovia's counsel "for discussion of appropriate ways in which Mr. Serricchio's return to work [could] be implemented."

On January 26, 2004, nearly two months later, Wachovia first responded to Serricchio's letter; an Employee Relations Specialist, Ken Rotondo, telephoned Serricchio. The parties disagree about the purpose of the call, but agree that Serricchio referred Rotondo to his attorney. On March 31, 2004, Serricchio reported to Wachovia's Westport office to begin work. When

10

Serricchio arrived, Lawrence Meyers, the branch manager, was not present and Serricchio instead spoke with the Branch Administrator, Carson Coyle. At that time, Coyle provided Serricchio with lists of those accounts still remaining that Serricchio had serviced in the past. Serricchio reviewed these lists and then communicated to Coyle that the list he had provided would generate virtually no commissions. Coyle told Serricchio he needed to speak with Meyers regarding the client lists.

Serricchio had a subsequent meeting with Meyers, in which Meyers told him that Wachovia would pay him a state-mandated $2000 monthly draw while he rebuilt his book of business. Wachovia contends that Serricchio would not have been required to repay this draw if his commission earnings had been less than the draw; however, Serricchio testified that Meyers told him he would be required to repay the draw regardless. At that time, Wachovia offered Serricchio no additional assistance in rebuilding his book of business, even though, as Serricchio testified, the bank could have arranged for him to partner with other brokers who had large accounts, could have offered him an interim salary while he rebuilt his book of business or could have offered him accounts opened from unsolicited new client calls. Instead, Wachovia offered him the opportunity to make "cold calls" to rebuild his book of business, a task he had not been required to undertake since the early days in his career.

**D**

A jury returned a verdict in favor of Serricchio on June 17, 2008, finding that Wachovia's actions constituted a violation of USERRA insofar as the bank (1) failed to offer him prompt reinstatement in failing to reinstate him by December 18, 2003; (2) failed to reinstate him to a position of employment as required by USERRA; and (3) constructively discharged him by

11

failing to offer him an adequate reemployment position or respond to the problems with the reemployment position that Serricchio had communicated to Wachovia. Following a bench trial on the issues of damages and equitable relief, on March 19, 2009, the district court awarded Serricchio backpay in the amount of $389,453, and liquidated damages in the same amount (based upon a finding that the USERRA violation was willful). *See Serricchio v. Wachovia Sec., LLC*, 606 F. Supp. 2d 256, 268 (D. Conn. 2009). The court also exercised its equitable powers to order Wachovia to reinstate Serricchio as a financial advisor and to offer him a salary of $12,300 per month for three months, while he regained his broker's licenses. The court further ordered Wachovia to pay Serricchio a monthly "draw" of $12,300 for the following nine months, to be offset against any commissions he would take in during that period.

Wachovia moved for judgment as a matter of law, or, in the alternative, a new trial. Wachovia argued in relevant part that it had complied with USERRA by offering Serricchio reemployment as a financial advisor at the same "rate of pay"—that is, the same commission rate he received before he was activated. On March 31, 2010, the district court denied Wachovia's post-trial motions, calculated the amount of pre-judgment interest, and awarded attorneys' fees and costs. *Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237 (D. Conn. 2010). The district court found that the evidence at trial was sufficient to allow the jury to conclude that Wachovia had violated USERRA when it made Serricchio "a reinstatement offer that a reasonable person could regard as financially precarious and professionally degrading." *Id.* at 249-50. On May 5, 2010, Wachovia appealed to this Court.

**E**

**1**

12

During the pendency of this appeal, we invited the Secretary of the United States Department of Labor to submit a letter regarding the Department's views on an employer's obligations under USERRA, where, as here, the servicemember was previously employed solely on a commission basis. The Secretary did so on July 21, 2011, through a submission signed by both the United States Department of Labor and the United States Department of Justice. We consider the views expressed therein for persuasive value. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that agency interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of [an agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."); *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 130 (2d Cir. 2009) (affording *Skidmore* deference to amicus brief from Food and Drug Administration).

The Department of Labor, in its submission to this Court, takes the position that Wachovia violated USERRA on the facts of this case by failing to reemploy Serrichio in a position of like "status" and "pay." Specifically, the Department of Labor states that "Wachovia should have determined what Serricchio's book of business would have been but for his military service by examining Serricchio's past performance and how similarly situated financial analysts fared during his absence, and then offered Serricchio his original and/or comparable client accounts that corresponded to his 'escalator position' book of business." The Department of Labor further states that "If, for whatever reason, it was not possible to provide Serricchio with the appropriate book of business, Wachovia should have taken other steps to restore Serricchio

13

to a position of like 'pay,' such as paying him an appropriate interim salary or offering him other opportunities for additional compensation while he built up his book of business to the requisite level." Finally, the Department of Labor explained that "Wachovia also violated USERRA by failing to offer a reemployment position of like 'status' when—instead of offering Serricchio a book of business that corresponded to his 'escalator position'—it required him to 'cold call' to rebuild his client accounts. This requirement diminished Serricchio's level of responsibility, his position vis-a-vis other employees, and his opportunity for advancement."

**2**

Both parties submitted responses to the Department of Labor's letter on July 28, 2011. Serricchio wrote in support of the Department of Labor's position and further noted that USERRA contains a safety valve provision in the form of a statutory defense that allows an employer to avoid the statute's reemployment obligations, inter alia, "if the employer's circumstances have so changed as to make such reemployment impossible or unreasonable," 38 U.S.C. § 4312(d)(1). Serricchio argues that Wachovia could have invoked this safety valve but affirmatively chose not to do so, and accordingly, Serricchio maintains that Wachovia has waived any right to raise any related defense now.

Wachovia's submission took a different position. Wachovia argued that the authorities relied upon by the Department of Labor are dated and inapposite. The principal thrust of Wachovia's argument was that the Department of Labor places too much stock in cases relating to commissioned employees operating in limited geographic areas (i.e., returning servicemembers with exclusive rights to a particular sales territory). Because Serricchio did not have an assigned "territory," Wachovia contends that the cases addressing commissions in this

14

context are not helpful in understanding Serricchio's rights under USERRA.

## III

Wachovia raises a number of arguments on this appeal. Wachovia argues first that the district court erred in denying summary judgment to the company. The company maintains that Serricchio's December 1, 2003 letter was not an unconditional demand for reinstatement as required by USERRA, and therefore, the question of liability under USERRA should never have been submitted to a jury. Second, Wachovia argues that the district court erred in denying judgment as a matter of law to Wachovia on two separate claims: (1) Serricchio's claim that Wachovia failed to reemploy him in an appropriate position under USERRA; and (2) Serricchio's claim that Wachovia constructively discharged him. Third, Wachovia argues that the district court's jury instructions contained four errors relating to (1) the calculation of rate of pay under USERRA, (2) the elevator principle, (3) the definition of seniority based benefits, and (4) what it means for income to be "reasonably certain" under the statutory framework. Fourth, Wachovia argues that there were a number of errors in the district court's damages verdict, including (1) that the district court reinstated Serricchio to a salaried position, even though he had not been employed in a salaried position prior to his activation, and (2) that the district court awarded liquidated damages on the basis that Wachovia's violation of USERRA was willful, a finding Wachovia argues was not supported by the evidence. Each argument is discussed in turn below.

## A

We review an order denying summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's

15

favor. *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009).

Initially, Wachovia argues that the district court erred in failing to grant it summary judgment because, in Wachovia's view, Serricchio's December 1, 2003 letter was not an unconditional demand for reinstatement. Under USERRA, servicemembers called away to military service "shall be promptly reemployed" by their former employers upon discharge. 38 U.S.C. § 4313(a). USERRA's regulations explain that "'[p]rompt reemployment' means as soon as practicable under the circumstances of each case," but "[a]bsent unusual circumstances reemployment *must* occur within two weeks of the employee's application for reemployment." 20 C.F.R. § 1002.181 (emphasis added). In order for USERRA's protections to apply, the servicemember must "notify the employer . . . of [his] intent to return to a position of employment with such employer . . . by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service." 38 U.S.C. § 4312(e)(1)(D). In the context of a predecessor law, we have held that where a returning servicemember's application for reinstatement puts the employer "on ample notice of his claim" to reemployment, "technical failure[s]" in the form of the application will not prevent the law's rehiring mandate from binding the employer. *See Martin v. Roosevelt Hosp.*, 426 F.2d 155, 159 (2d Cir. 1970).

In *Martin*, a medical resident was called away to Navy service. *Id.* at 157. During his service, he wrote to the hospital where he had been a resident to inquire about the possibility of returning to his previous position upon his discharge from the Navy. *Id.* The hospital asked him to fill out an application, but ultimately told him there was no room in the program. *Id.* at 157-58. Martin took another position at a different hospital, with which he quickly became

16

dissatisfied, and he again took up correspondence with the former hospital in an attempt to return to his residency there. *Id.* at 158.

During the second round of communications, Martin requested that he be hired as a second-year resident, even though he had left the hospital when he was a first year resident. *Id.* at 158-59. The hospital argued that Martin had not met the requirements of the Selective Service Act (USERRA's predecessor), because the first round of communications during which he asked for reinstatement occurred outside the statutory period for notification (i.e., before he was discharged), and the second round of communications included no demand for reinstatement. *Id.* We rejected the claim that Martin's second round of communications did not constitute a demand for reinstatement simply because they requested a position to which he was not entitled under the statute. Martin's communications were adequate because, although they demanded a second-year residency position, they did "not suggest that he was no longer interested in the first-year residency position if that was the best he could get." *Id.* at 159. We concluded that "[i]t would be out of keeping with the broadly protective purpose of the statute to deny its benefits because Dr. Martin did not, during the ninety days following discharge, repeat the request which the hospital had already twice rejected." *Id.* We also cited with approval to the First Circuit's reasoning in *Trusteed Funds, Inc. v. Dacey*, 160 F.2d 413 (1st Cir. 1947), in which the court held that "a veteran does not necessarily lose all his rights under the Act merely because in applying for reemployment he couples such application with a demand for something he erroneously believes to be his due." *Martin*, 426 F.2d at 159 (internal quotation marks omitted).

Only two cases have held that an employee's demand for reinstatement after a period of

17

military service was too ambiguous to meet the requirements of USERRA.  The first, *Baron v. United States Steel Corp.*, 649 F. Supp. 537 (N.D. Ind. 1986), involved a plaintiff who visited his former employer and notified it that "he was going to try to go to college and that if he did not succeed in getting admitted to college, he would come back to USX and request work."  *Id.* at 540.  The district court held that this was not an unconditional demand for reemployment, and therefore, was not effective to trigger the plaintiff's right to reemployment.  Then, in *McGuire v. United Parcel Service*, 152 F.3d 673 (7th Cir. 1998), the Seventh Circuit upheld a grant of summary judgment to a defendant employer under USERRA where the employee had only casually inquired about the procedures for obtaining reemployment, and when the employer responded, directing him to contact the HR supervisor, he filed suit instead of acting as instructed.  *Id.* at 677-78.  The court held that the plaintiff's casual inquiry into the *procedures* for obtaining his job was not "an application for reemployment" as required by USERRA.  *Id.* at 678.

Wachovia argues that, as in *Baron* and *McGuire*, Serricchio never "unconditionally" asked for reinstatement.  Wachovia bases this argument on the fact that Serricchio asked to be reinstated in a letter in which he also (1) identified a number of actions he believed Wachovia had taken in violation of its obligations under USERRA, and (2) grossly overstated the size of his pre-activation book of business.  Wachovia urges us to interpret the letter as a threat of litigation rather than a reemployment application.  However, the letter plainly asked that Serricchio be reinstated, and the fact that it complained about other actions taken by Wachovia does not, under relevant law, negate the fact that it included a demand for reinstatement.  *See Dacey*, 160 F.2d at 422; *accord* 20 C.F.R. § 1002.118 ("An application for reemployment need

18

not follow any particular format. . . . The application should indicate that the employee is a former employee returning from service in the uniformed services and that he or she seeks reemployment with the pre-service employer. The employee is permitted but not required to identify a particular reemployment position in which he or she is interested.").

Here, the letter opened by stating that "Michael Serricchio, who has now completed his active duty service with the United States Air Force . . . *seeks reinstatement* to his Financial Advisor position with Wachovia Securities (formerly Prudential Securities) ["Wachovia/Prudential"] with the full reemployment rights guaranteed by the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, et seq." The letter then complained of certain "adverse employment actions" taken by Wachovia and provided a list of such actions. However, the letter also went on to note that the "adverse actions" had "impaired" Serricchio's "ability to *resume his position* and regain his prior earnings level." And while the letter requested a meeting with counsel for Wachovia, it did so only in the context of a "discussion of the appropriate ways in which Mr. Serricchio's *return to work* can be implemented and the harm to Mr. Serricchio addressed." The letter was plainly not a conditional request for reemployment; it requested reinstatement in no uncertain terms. Therefore, there is no question that the district court did not err in denying summary judgment to Wachovia on this claim. *See Serricchio v. Wachovia Sec., LLC*, 556 F. Supp. 2d 99 (D. Conn. 2008).

**B**

Having concluded that the district court correctly denied Wachovia's motion for summary judgment, we move to the district court's denial of Wachovia's motion for judgment as a matter of law, which we review de novo. *See Parrot v. Guardian Life Ins. Co. of Am.*, 338

19

F.3d 140, 142 (2d Cir. 2003).

**1**

Wachovia argues first that the district court erred in denying judgment as a matter of law because the bank did, in fact, offer Serricchio reemployment in "the position most comparable to the one he would have held if not for his leave," which is all that USERRA requires. Specifically, Wachovia argues that Serricchio was offered an identical "rate of pay": "a standard monthly minimum draw plus additional compensation that was determined on a 100% commission basis." In this context, Wachovia maintains that only "the total *amount* of pay . . . changed." Wachovia further argues that USERRA required only the restoration of "seniority-based" benefits, and since "[n]either the volume of Serricchio's pre-leave book of business nor the commissions he might have earned meets the definition of 'seniority-based benefits' . . . Serricchio could not lay claim to either under USERRA."

In the first instance, we note that Wachovia's failure to reply to Serricchio's letter requesting reinstatement for nearly two months, coupled with the bank's failure to actually reemploy him for nearly four months, created a triable issue of fact regarding whether Wachovia violated USERRA. *See* 20 C.F.R. § 1002.181 ("Absent unusual circumstances, reemployment must occur within *two weeks* of the employee's application for reemployment." (emphasis added)). Indeed, the jury concluded that Wachovia's failure to reemploy Serricchio by December 18, 2003, constituted a violation of Serrichio's rights under USERRA. Wachovia has not appealed this portion of the verdict. Thus, the question of whether Wachovia offered Serricchio suitable reemployment is relevant primarily to the district court's calculation of damages—not to the jury's finding of liability, which was based in part on Wachovia's failure to

20

offer Serricchio *any* position of reemployment by December 18.

With respect to the position Wachovia ultimately offered Serricchio in March 2004, USERRA requires employers to offer returning servicemembers either "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, *or* a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A) (emphasis added). Here, the parties agree that the nature of Serricchio's straight commission job was such that the relevant question regarding reemployment is limited to whether the position Wachovia offered Serricchio was of "like seniority, status and pay."

## 2

In the context of USERRA, "the status of the reemployment position requires the employer to assess what would have happened to such factors as the employee's opportunities for advancement, working conditions, job location, shift assignment, rank, responsibility, and geographical location, if he or she had remained continuously employed." 20 C.F.R. § 1002.194. "The reemployment position may involve transfer to another shift or location, more or less strenuous working conditions, or changed opportunities for advancement, depending upon the application of the escalator principle." *Id.*

Wachovia argues, albeit for the first time in its reply brief, that the case law interpreting "status" in the context of USERRA and predecessor statutes limits the relevant question to whether Serricchio was given a demotion in title upon his return from active duty. In support of this argument, Wachovia cites *Nichols v. Department of Veterans Affairs*, 11 F.3d 160, 161 (Fed. Cir. 1993) ("Chief, Chaplain Services" demoted to "Staff Chaplain"); *Trusteed Funds v. Dacey*,

21

160 F.2d 413 (1st Cir. 1947) ("Public City Manager" demoted to a "Vice President" role with different responsibilities in another city); *Duarte v. Agilent Technologies, Inc.*, 366 F. Supp. 2d 1039, 1042 (D. Colo. 2005) ("primary design consultant" demoted to position where he reported to other "primary design consultants"); and *Harris v. City of Montgomery*, 322 F. Supp. 2d 1319, 1323-24 (M.D. Ala. 2004) ("Head Coach" demoted to "Assistant Coach"). While these cases establish that a titular demotion may constitute an actionable alteration in "status" under USERRA, they do not establish that such a titular demotion is necessary to find that such an alteration occurred. Rather, the plain language of USERRA makes clear that status must be assessed with regard to factors beyond mere title or "rank"—employers must also assess the "employee's opportunities for advancement, working conditions, job location, shift assignment . . . responsibility, and geographical location." 20 C.F.R. § 1002.194.

Here, the evidence indicated that prior to his activation, Serricchio was responsible for servicing in excess of 130 accounts, and, along with a partner, was responsible for managing in excess of $9 million dollars. By contrast, Wachovia's offer for reemployment consisted of providing Serricchio with a limited number of small accounts, a modest monthly draw that would be offset by any commissions earned, and opportunities for cold calling clients. As the district court concluded, these facts were sufficient for a reasonable fact finder to conclude that the position Serricchio was offered upon his return to Wachovia did not provide the same opportunities for advancement, working conditions and responsibility that he would have had but for his period of military service. *See Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237, 245 (D. Conn. 2010). And because judgment as a matter of law may only be granted where there is a "complete absence of evidence supporting the verdict," *Brady v. Wal-Mart Stores, Inc.*, 531

22

F.3d 127, 133 (2d Cir. 2008), we conclude the district court committed no error in denying judgment to Wachovia on this ground.

**3**

Wachovia next argues that the district court erred in denying judgment as a matter of law on the question of whether Serricchio was reinstated at a position with the same "pay" as he would have received but-for his period of military service. It is undisputed that the compensation package offered by Wachovia upon Serricchio's return from active duty—a $2000 per month standard draw to be offset by commissions (paid at his preservice rate), a limited number of accounts, and an opportunity to make "cold calls" to rebuild his book of business—would have provided Serricchio significantly less than the approximately $6500 per month that he earned in commissions prior to his activation.

USERRA's legislative history states that "pay" is "easily determined," though the statute and its regulations offer limited clarification on how that term is to be construed. H.R. Rep. No. 103-65, at 31 (1993), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2464, 1993 WL 235763. The commentary to USERRA's regulations provides that the servicemember is entitled to "any compensation, in whatever form, that the employee would have received with reasonable certainty if he or she had remained continuously employed." Uniformed Services Employment and Reemployment Rights Act of 1994, 70 Fed. Reg. 75,246, 75,278 (Dec. 19, 2005). In determining the appropriate pay, an employer may examine the servicemember's work history, his "prospects for future earnings," and the pay of similarly situated employees. 20 C.F.R. § 1002.193(a) (work history and future earnings); *see also Loeb v. Kivo*, 169 F.2d 346, 351 (2d

23

Cir. 1948) (pay of similarly situated employees).

In the context of a predecessor statute, a number of courts, including this Court, have held that a servicemember who was previously employed in a commission-based position prior to activation must be reemployed in a position that provides comparable commission earning opportunities. For example, in *Loeb v. Kivo*, 169 F.2d at 351, this Court held that the employer had failed to offer a returning servicemember salesman a position of like pay, seniority and status where the servicemember "was kept at work in the stockroom, was given no opportunity to meet any customers, . . . no time outside the defendants' offices to solicit business or to seek familiarity with his old customers, and denied all opportunity of any kind to act as a salesman." *Id.* at 348 (internal quotation marks omitted). In *Levine v. Berman*, 161 F.2d 386 (7th Cir. 1947), the Seventh Circuit reached a similar conclusion. That case involved an employer who offered a returning servicemember reemployment in a different territory and at a different commission rate than he had received prior to his service. The court held that the offer for reemployment was deficient in part because the servicemember was not allowed to leverage "his acquaintance and knowledge of [the prior] territory" into commission generating sales, which resulted in reduced earnings opportunities. *Id.* at 388. Finally, in *Dacey*, the First Circuit held that a reemployment offer was not of like seniority, status and pay where, among other things, the reemployment position would have required the servicemember salesman "to start from scratch, recruiting a sales force, and building up the business in the region assigned." 160 F.2d at 419. *Accord Whitver v. Aalfs-Baker Mfg.*, 67 F. Supp. 524, 527 (N.D. Iowa 1946) (reemployment offer "did not constitute an offer to restore the plaintiff to a position with like pay . . . because the volume of sales in the proffered territory would be smaller").

More recently, a district court in Massachusetts held that an employer had violated USERRA because the reemployment "position lacked the sales commissions and other benefits of plaintiff's preservice position." *Fryer v. A.S.A.P. Fire & Safety Corp.*, 680 F. Supp. 2d 317, 326 (D. Mass. 2010). The court explained, "The evidence supports a significant reduction in pay because . . . the position lacked an adequate opportunity to pursue and procure sales commissions." *Id.*

As the Department of Labor explains at length in its letter to this Court, *Fryer* and the other holdings are consistent with the interpretation of the reemployment right that the Department of Labor has given USERRA's predecessor statutes, which contained similar provisions. *See, e.g.*, U.S. Dep't of Labor, Legal Guide and Case Digest, Veterans Reemployment Rights Under the Universal Military Training and Service Act, as amended, and related Acts § 6.211 (1979) ("Legal Guide"). In the Legal Guide, which interprets a predecessor statute, the Department of Labor explained that "[t]he 'pay' protected under the statutes includes all elements of pay, such as traveling expenses, drawing accounts, hourly rates, piece rates, bonuses, etc." *Id.* Specifically, the Legal Guide states that:

> It must be borne in mind that the courts look to the *actual pay* accorded the ex-serviceman, not the technical pay terms of his job. Hence, assigning an ex-serviceman as a "like" position a different sales territory with commission percentages identical to those in his former position will not effect compliance, if the new territory does not yield the equivalent of the pay he would receive, if restored to his former position.

*Id.* (emphasis added). For the purpose of clarity, the Legal Guide continues: "Likewise, piece rates or hourly rates in a job yielding less total pay than the former position will not effect compliance, notwithstanding the job is of 'like' seniority and status and *the rates are identical* to

25

those of the former job." *Id.* (emphasis added). This interpretation, though not controlling, is entitled to deference under the principles announced in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), as a number of other courts have recognized. *See, e.g.*, *Sykes v. Columbus & Greenville Ry.*, 117 F.3d 287, 295 (5th Cir. 1997); *Lieb v. Georgia-Pac. Corp.*, 925 F.2d 240, 245 (8th Cir. 1991).

The Legal Guide, like the case law chronicled above, makes clear that where an employee previously received commissions, the relevant inquiry regarding reemployment relates to the total amount of pay the servicemember previously received—not just the rate of the commissions. Because Wachovia moved for judgment as a matter of law on the ground that it was not obligated to do more than offer Serricchio the same rate of commissions that he had previously received, an interpretation of USERRA that we reject, we also conclude that the district court did not err in denying judgment to Wachovia on this ground.

**4**

Finally, Wachovia has moved for judgment as a matter of law on Serricchio's claim that the company's actions resulted in his constructive discharge.

Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) (internal citation and quotation marks omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003).

Wachovia argues that the district court erred in denying its post trial motion to set aside

26

the constructive discharge verdict on the ground that there was no direct evidence in the record that it "*intentionally* dissipated any accounts or otherwise sought to render [Serricchio's] working conditions intolerable." Specifically, Wachovia argues that "[t]he only evidence concerning the diminution of Serricchio's book of business established that it was caused by factors outside of Wachovia's control." Wachovia points to market conditions, the fact that many of Serricchio's accounts were shared with other advisors, who left and took the accounts with them to their new employers, and transfers to the national call center, which were part of a corporation-wide initiative that Wachovia urges could not have been reasonably interpreted as a plan to render Serricchio's working conditions intolerable. Rather, Wachovia argues that the national call center, in particular, "coincided with an overall shift in [Wachovia's] focus from transactional business, in which financial advisors are paid commissions based upon their clients' trading activity, to fee-based business, in which advisors are paid fees as a percentage of assets under management and are incentivized to grow such assets," a change that was not specific to Serricchio at all. Wachovia further notes that on the date Serricchio's position was offered to him, no information was available about how his accounts would perform after April 2004. Finally, Wachovia argues that Serricchio was required to give his employer an opportunity to remedy the working conditions before bringing a constructive discharge claim, which Serricchio did not do, since he "abandoned his position within hours of reinstatement."

None of the three cases cited by Wachovia in support of its position dictates the outcome of a case like this, where the employer had notice of the particular problems with the employment position and took no steps to attempt to ameliorate them. In *Knowles v. Citicorp. Mortgage, Inc.*, 142 F.3d 1082 (8th Cir. 1998), for example, the veteran notified his employer of

the reason he quit only after he had abandoned his position. *Id.* at 1084-85. Similarly, in *Major v. Phillips-Jones Corp.*, 192 F.2d 186 (2d Cir. 1951), the employer's reasonable suggestions regarding accommodations were "met by flat refusals on the part of the plaintiff to discuss the situation at all." 192 F.2d at 188-89. Finally, in *Lisdahl v. Mayo Foundation for Medical Education & Research*, 698 F. Supp. 2d 1081 (D. Minn. 2010), the plaintiff left for medical leave and then quit without ever even telling the employer of the allegedly intolerable working conditions. *Id.* at 1109.

Here, by contrast, Wachovia knew for months about the problems with its offer for reemployment. That is, in December 2003, Serricchio (through his attorney) sent a reinstatement demand letter to Wachovia outlining his concerns and identifying specific problems that he believed existed. Wachovia took no action in response. Although Wachovia disputes the substance of the conversation between Wachovia and Serricchio when the company first contacted him in response to his letter, the parties agree that the first contact from Wachovia was a call from Employee Relations Specialist Ken Rotondo on January 26, 2004, nearly two months after Serricchio sent his letter. More than two more months then passed before Serricchio was invited to report to the Westport Office for work, at which point Serricchio spoke to Branch Administrator Carson Coyle, who communicated Wachovia's offer: a position with a $2000 per month draw and accounts that would yield very limited commissions. During the meeting with Coyle, Serricchio again voiced his concerns about the offer, but no actions were taken to address Serricchio's complaints aside from Coyle's referring Serricchio to Meyers to discuss the terms of his reemployment. Serricchio returned to the branch a few days later to discuss the position with Meyers, who reaffirmed the offer as it had previously stood. Because there is no question that

28

Wachovia knew about Serricchio's grievances and did nothing to redress them, the cases cited by Wachovia are inapposite.

The alternate ground on which Wachovia relies, namely that there is no "direct" evidence of Wachovia's wrongful intent, only circumstantial evidence, is equally meritless. In the Title VII context, we have accepted circumstantial evidence to establish an employer's wrongful intent. *See Krieger v. Gold Bond Bldg. Prods.*, 863 F.2d 1091, 1096-97 (2d Cir. 1988). We see no principled basis on which to limit liability under USERRA to only direct evidence, nor has Wachovia pointed to any statutory language that would support such a conclusion. Moreover, as the district court observed, there was ample circumstantial evidence to support the jury's finding of liability on Serricchio's constructive discharge claim. As the court noted, the jury heard evidence

> including Wachovia's unexplained[] lengthy delay in offering to reinstate Serricchio. . . . It also heard testimony from Nancy Gibbons, Wachovia's expert on its leave policy, that Wachovia ostensibly maintained a generous military-leave policy applicable to returning veterans, and there was no reason for the delay in reemploying Serricchio. In addition . . . evidence was presented that Serricchio was offered reinstatement in an inferior position than he had had before he left for military service on which he could not have supported his family, even if his draw would have been the same, particularly where Wachovia had changed the structure of Serricchio's role as financial advisor and altered its business model from transaction-based to fee-based, leaving him to do "cold calling," which he had not done since his early days as an employee of Defendant. Further, there was evidence that Serricchio's supervisor, Lawrence Meyers, was dissatisfied with his accounts and froze them before his return. Meyers testified that he knew that Serricchio would be unable to support himself and his family on the monthly draw and minimal commissions generated by the remaining accounts.

706 F. Supp. 2d at 249. Based on this and other record evidence, we conclude that the district

29

court committed no error in denying judgment to Wachovia on Serricchio's constructive discharge claim.[2]

## C

Wachovia next appeals based upon what it argues are errors in the jury charge. We review de novo a claim of error in jury instructions, reversing "where, viewing the charge as a whole, there was a prejudicial error." *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (internal quotation marks omitted).

## 1

Wachovia claims that the district court erred in instructing the jury on "pay" rather than "rate of pay," which Wachovia argues allowed the jury to conclude that Serricchio was entitled to the total amount of compensation he received pre-activation rather than limiting his entitlement to the same commission structure that he was receiving before he left—i.e., a $2000 monthly draw and the same commission percentage on transactions. The jury instruction provided in relevant part that:

> Wachovia was not required to provide Mr. Serricchio his exact previous book of business so long as what it offered him gave him the opportunity to reenter the work force with comparable status and commission opportunity as of the date of reinstatement that he would

---

[2] When Wachovia first recruited Serricchio, it offered him a salary advance of $229,582, which was to be repaid pursuant to terms contained in two documents: a promissory note and his employment agreement. Among other terms, the employment agreement provided that if Serricchio were "to resign or be fired for cause, the balance of the Promissory Note would become due and payable." Pursuant to the terms of the agreement, Wachovia counterclaimed for the balance outstanding on the note in connection with this lawsuit. However, because constructive discharge is a complete defense to enforcement in this case, the jury's finding that Serricchio was constructively discharged, which we affirm, means that Wachovia's counterclaim automatically fails.

30

have had had he not taken military leave, regardless of whether the same clients were in his substituted book of business provided on his return.

For the reasons already stated, we conclude that there was no error in the district court's instruction. The plain text of USERRA and the case law make clear, as the Department of Labor explained in its well-reasoned letter, that USERRA requires an employer to offer a servicemember returning to a financial advisor position the book of business he would have had but for his period of service. To the extent that the pre-service book of business is unavailable for one or more reasons, USERRA obligates the employer to take steps to restore the servicemember to a position of like "pay," which may include providing an interim salary while the servicemember rebuilds his book of business. While USERRA acknowledges that a servicemember's book of business might have fluctuated had the servicemember not been absent, the law makes clear that the employer must determine what would have happened to the servicemember's book of business had he not been absent and adjust accordingly. It is not enough, as Wachovia urges, to offer the servicemember simply a minimal draw and the same commission rate as he received preservice without regard to his preservice book of business. *See* Legal Guide § 6.211 ("[P]iece rates or hourly rates in a job yielding less *total pay* than the former position will not effect compliance, notwithstanding the job is of 'like' seniority and status and the *rates* are identical to those of the former job." (emphasis added)). Thus, the district court's instruction, which advised the jury to consider the "commission opportunity . . . that [Serricchio] would have had had he not taken military leave" was an accurate iteration of the state of the law.

**2**

Wachovia next claims error in the district court's instruction on the "escalator principle," which provided in relevant part that:

> To prove Wachovia violated this USERRA requirement, Mr. Serrichio must prove that Wachovia failed to reinstate him to a position which, at the time the position was offered, reflected with reasonable certainty the pay, benefits, seniority and other job perquisites that he would have obtained if not for the period of his military service, the escalator position, or a position comparable to the escalator position, or to his pre-service position, or to a position which was the nearest to any of these positions.

Wachovia argues that insofar as "[t]he term 'escalator' connotes upward movement . . . [the jury] instruction implied that the only sufficient position to which Wachovia could reinstate Serricchio was one equal to or better than the position he held prior to his leave." Wachovia argues, however, that "Serricchio's book of business was diminished by numerous events outside Wachovia's control, including the actions of Serricchio's chosen partners and the realities of the financial markets." The fault of the instruction, Wachovia insists, was that it "failed to provide the jury with a full understanding of USERRA and suggested that Serricchio was entitled to equal or higher pay following his leave regardless of intervening lawful events." In other words, Wachovia maintains that the district court should have expressly instructed the jury on lawful adverse job consequences. We disagree.

In the first instance, Wachovia's argument regarding the "escalator principle" is a corollary of its earlier argument regarding "pay" and fails for similar reasons. That is, the problem with Wachovia's argument is the company never determined what Serricchio's book of business would have been but for his military service, as it was required to do in order to comply with USERRA. *See* 20 C.F.R. § 1002.192. Instead, Wachovia argues that not all declines in the

32

book of business were the product of Wachovia's actions—for example, Serricchio's partners took certain of his accounts with them when they left Wachovia. In making this argument, Wachovia misses the point. The central consideration is not whether Wachovia itself intentionally dissipated Serricchio's book of business but rather what would have happened to Serricchio's book of business *but for* his absence; had he never served in the Air Force, his clients might never have left Wachovia, because their accounts might never have been transferred to other brokers.

Further, nothing in the instruction given by the district court prohibited the jury from concluding that certain adverse consequences to Serricchio's book of business should be considered in determining Serricchio's reemployment position. The charge was neutral in this regard and tracked the language in the underlying regulation, which reads in relevant part:

> In all cases, the starting point for determining the proper reemployment position is the escalator position, which is the job position that the employee would have attained if his or her continuous employment had not been interrupted due to uniformed service. . . . The reemployment position may be either the escalator position; the pre-service position; a position comparable to the escalator or pre-service position; or, the nearest approximation to one of these positions.

*Id.* We generally find no error in charges that track the statutory language. *See United States v. Alfisi*, 308 F.3d 144, 150 (2d Cir. 2002). We find no reason to deviate from this axiom here.

**3**

Wachovia also argues that the district court erred in failing to instruct the jury that Serricchio was entitled only to "seniority-based benefits." Wachovia maintains that Serricchio's book of business was not a "perquisite" of seniority, which is all he was entitled to, because

33

"[t]he extent to which Serricchio might have accumulated accounts and commissions had he not been on leave is wholly speculative [and] unrelated to his length of service."

USERRA defines "seniority" as "longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." 38 U.S.C. § 4303(12). USERRA provides that a returning servicemember is "entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4316(a).

Wachovia cites two principal cases in support of its position, which is, at base, that it was not required to determine "what Serricchio might have earned had he not left," because his commissions were really merit increases in his pay. Both of these cases, *Mullins v. Goodman Distrib., Inc.*, 694 F. Supp. 2d 782, 790 (S.D. Ohio 2010), and *Fannin v. United Space Alliance, LLC*, No. 07 Civ. 1315, 2009 WL 139878, at *9 (M.D. Fla. Jan. 20, 2009), involved a grant of summary judgment to a defendant on the ground that the plaintiff had failed to come forward with sufficient evidence to establish that he was entitled to the increases in pay during the period of military leave. In this case, by contrast, Wachovia is not simply alleging that it was not required to increase Serricchio's pay during his absence—the company affirmatively asserts that it was entitled to significantly *decrease* his compensation based solely on the fact that Serricchio occupied a commission-based position and therefore all compensation (from commissions) above the standard $2000 monthly draw can be considered speculative, because only $2000 per month was guaranteed. We cannot reconcile that position with the statute and the regulations

34

promulgated thereunder, which expressly state that an employee "does not have to establish" that he would have received the total amount of compensation "as an absolute certainty." 20 C.F.R. § 1002.213.

USERRA, like its predecessor statutes, protects a servicemember returning from military duty "against receiving a job inferior to that which he had before entering the armed services." *Fishgold*, 328 U.S. at 284. Specifically, USERRA entitles a returning servicemember to reemployment "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, *or* a position of like seniority, status *and* pay." 38 U.S.C. § 4313(a)(2)(A) (emphasis added). The commissions that Serricchio received before leaving for his tour of duty were his "pay" to which he was entitled upon his return. For this reason, Wachovia's argument fails.

**4**

Wachovia's final objection to the district court jury instructions relates to the fact that the district court failed to define the phrase "reasonable certainty" as a "high probability." The district court instructed the jury in relevant part that:

> To prove that Wachovia violated this USERRA requirement, Serricchio must prove that Wachovia failed to reinstate him to a position which, at the time the position was offered, reflected with reasonable certainty the pay, benefits, seniority, and other job perquisites that he would have attained if not for the period of his military service.

The phrase "high probability" appears in 20 C.F.R. § 1002.213, which provides in relevant part that: "A reasonable certainty is a high probability that the employee would have received the seniority or seniority-based right or benefit if he or she had been continuously

35

employed. The employee does not have to establish that he or she would have received the benefit as an absolute certainty." We agree with the district court that "there is no clear distinction between the phrase 'reasonable certainty' [as] used in the instruction and the phrase 'high probability' as used in 20 C.F.R. § 1002.213." *Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237, 248 (D. Conn. 2010). Wachovia has offered no compelling argument regarding the difference in these phrases, aside from its conclusory assertion that "reasonable certainty" is an "amorphous phrase." Accordingly, we conclude that there was no error in the district court's instruction.

## IV

Finally, Wachovia appeals the district court's damages verdict on two grounds. First, Wachovia argues that the district court erred in reinstating Serricchio with a guaranteed salary of $12,300 for three months, to be followed by nine months, during which Serricchio would receive a $12,300 monthly draw to be offset by any commissions he brought in. Wachovia argues that this award was in error both because the dollar figure fixed by the district court was "arbitrary and [bore] no logical relationship" to the commissions he had previously earned, and because Serricchio was never entitled to a fixed salary in the first place. The district court also awarded liquidated damages to Serricchio in the amount of $389,453, which was equal to the backpay award. Wachovia argues this decision was in error because the evidence was insufficient to support a finding that it wilfully violated USERRA.

## A

We address the liquidated damages verdict first. On this point, Wachovia argues that the district court erred in awarding liquidated damages because "Wachovia acted reasonably in

36

attempting to meet its legal obligations" and "[t]he issues raised in this litigation were ones of first impression"; therefore, a reasonable fact-finder could not have concluded that any violation of USERRA was willful.

We review a district court's decision on whether to award damages for abuse of discretion. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 752 (2d Cir. 1996). However, "the amount of recoverable damages is a question of fact" that we review for clear error. *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 261 (2d Cir. 2002) (internal quotation marks omitted). Further, "[w]hether a litigant was at fault or acted willfully or in bad faith are questions of fact, and we review the District Court's determinations for clear error." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

USERRA provides that a prevailing party is entitled to a doubling of the backpay award upon a determination that "the employer's failure to comply with the provisions of [USERRA] was willful." 38 U.S.C. § 4323(d)(1)(C). The Supreme Court has explained that where "an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988). Similarly, where an "employer acts unreasonably, but not recklessly, in determining its legal obligation," then its action should not be "considered willful." *Id.*

Here, the district court concluded that Wachovia had willfully violated USERRA in failing to reemploy Serricchio promptly, in failing to offer him a position comparable to his pre-service position when it did offer Serricchio reemployment, and by constructively discharging him. *See Serricchio v. Wachovia Sec. LLC*, 606 F. Supp. 2d 256, 265-66 (D. Conn. 2009). The district court based its conclusion in large part on the testimony of Nancy Gibbons, the

37

Wachovia manager responsible for the company's military leave policies, who testified that she understood that USERRA required "prompt" reinstatement. *Id.* In light of the fact that Wachovia made no attempt to reinstate Serricchio "promptly," and the company did not even respond to his request for reinstatement for months, the district court concluded that Wachovia's actions were willful. *Id.* The district court reiterated this reasoning in denying Wachovia's post-trial motions. 706 F. Supp. 2d at 250. The same reasoning applies here. Wachovia offered no evidence to excuse its failure to "promptly" reinstate Serricchio as required by USERRA. Accordingly, we conclude that there was no error in the district court's finding of willfulness as to the prompt reinstatement claim.[3]

Ample evidence also supports the district court's findings as to the constructive discharge and comparable position claims. In the first instance, we note that the jury's verdict in favor of Serricchio on his constructive discharge claim required a finding of intent. *See Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003) (A constructive discharge occurs when an employer "intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily."). Specifically, the district court's jury instructions provided in relevant part that: "Serricchio must prove . . . that the defendant, rather than discharging him directly, created a work atmosphere so intolerable that Mr. Serricchio was forced to quit involuntarily. The plaintiff must prove that Wachovia's actions were *intentional or deliberate* and were more than merely negligent." 706 F. Supp. 2d at 249 (emphasis added). Thus, the jury's conclusion that Wachovia constructively discharged Serricchio was a finding that the company willfully violated

---

[3] Wachovia has wisely conceded that the district court's finding of "willfulness" as to the prompt reinstatement claim was not error.

its USERRA obligations as to that claim.

Relevant to the range of USERRA violations, but specifically the district court's finding that Wachovia willfully failed to reemploy Serricchio in a comparable position, the district court explained that "Wachovia was a sophisticated company, employing many commission-based financial advisors like Serricchio, which had in place a written military-leave policy and a team of people responsible for dealing with military-leave issues." 606 F. Supp. 2d at 266. Considered in conjunction with Gibbons' testimony that "she understood what USERRA required and recognized Wachovia's obligations with respect to Serricchio," the district court concluded that Wachovia willfully failed to offer Serricchio a reemployment position comparable to his pre-service position. *Id.* In so doing, the district court noted that "[e]ven assuming that USERRA's terms are subject to reasonable misinterpretation, Wachovia failed to show that it *tried* to comply with the law as it applies to Serricchio." *Id.* (emphasis added). Indeed, Wachovia was aware that Serricchio could not support himself on the $2000 per month draw that it had offered him, but it does not appear that Wachovia ever even consulted an attorney about its USERRA obligations. For these reasons, we conclude there was no error in the district court's award of liquidated damages based upon its finding that Wachovia willfully failed to comply with USERRA.

**B**

Wachovia next argues that the district court erred in (1) awarding a temporary salary to Serricchio and (2) fixing that number at $12,300 per month, on the ground that the figure is "arbitrary." Wachovia provides no additional explanation of its position regarding the calculation of the $12,300 figure, which, in any event, we review only for clear error. *See*

39

*Lucente v. IBM Corp.*, 310 F.3d 243, 261 (2d Cir. 2002).

**1**

Here, the district court calculated damages in a separate proceeding, after the jury

returned its verdict finding liability and after hearing substantial testimony and taking evidence

from both parties. *See Serricchio v. Wachovia Sec., LLC*, 606 F. Supp. 2d 256 (D. Conn. 2009).

The figure of which Wachovia complains ($12,300 per month) was based upon a comprehensive

formula, derived from the testimony of both parties' experts, that accounted for, inter alia, a nine

percent annual growth rate in Serricchio's earnings. *Id.* at 261. That is, the district court

estimated Serricchio's annual salary for 2009 to be $147,609, or $36,902 for the first three

months of 2009. *Id.* Dividing $36,902 by three, to create a per month income estimate, leaves a

monthly income of $12,300. Wachovia has not challenged that portion of the district court's

order calculating Serricchio's lost earnings, nor has Wachovia identified any error in the

calculation. Accordingly, any appeal based on the district court's methodology has therefore

been waived. Further, as the district court's order makes clear, the $12,300 per month figure

bears a direct relationship to the projected growth of Serricchio's book of business; therefore, we

find no error in the district court's application of this figure to its reinstatement award.

**2**

With respect to the terms of Serricchio's reinstatement ordered by the district

court—specifically, the fact that the district court awarded Serricchio a salary, though he had not

previously been a salaried employee, we review the award for abuse of discretion. *See*

*Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 76 (2d Cir. 2004)

(decision to grant or deny an equitable remedy reviewed for abuse of discretion).

As a threshold matter, our Circuit favors reinstatement as a remedy in employment cases generally. *See Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 230 (2d Cir. 2006) (noting an "overarching preference in employment discrimination cases for reinstatement"). USERRA, specifically, provides for the remedy of reinstatement by permitting courts to "require the employer to comply with the provisions of [USERRA]," 38 U.S.C. § 4323(d)(1)(A), and by granting a court "*full equity powers* . . . to vindicate fully the rights or benefits" of veterans seeking reemployment, 38 C.F.R. § 4323(e) (emphasis added).

Here, the district court used its equitable powers to compel reinstatement and establish compensation during the period of reinstatement. Concluding that the plaintiff would require three months to regain his licenses, which had expired since he first requested reinstatement after his discharge from the armed forces, the district court established a set salary for those three months ($12,300 per month). *Serricchio*, 606 F. Supp. 2d at 266-67. Although the record is silent as to whether Serricchio *could* have maintained his licenses while not employed as a broker, the logic underlying this award was that Wachovia committed USERRA violations, which in turn caused the plaintiff's licenses to lapse, and therefore the equitable award was necessary to account for the time it would take Serricchio to regain his licenses. *See id.* And until Serricchio is licensed, he is "prohibited from advising clients and making transactions," which means that during any period of reinstatement before he obtains new licenses, Serricchio will be unable to earn commissions; thus, reinstating Serricchio without a salary would not vindicate his rights. *Id.*; *see* 38 U.S.C. § 4323(e) ("The court shall use . . . its full equity powers . . . to vindicate fully the rights or benefits of persons under this chapter.").

Serricchio points out that the district court's salary award was similar to front pay, and

directs us to at least one decision where a court has held that front-pay damages are available under USERRA. *See Carpenter v. Tyler Indep. Sch. Dist.*, 226 F. App'x 400 (5th Cir. 2007). We also note that at least one court has held that an improperly terminated veteran was entitled to his salary while he retrained for a commissioned sales position. *See Bankston v. Stratton-Baldwin Co., Inc.*, 441 F. Supp. 247, 250 (S.D. Ala. 1977) ("The plaintiff is to be reinstated as an employee of the defendant . . . . He is to receive the same salary of $720.00 per month ($220 for expenses), plus a sales commission of 2% of gross sales for a period of five months since the plaintiff has been denied continuous sales experience for the full one-year period found by the court as reasonable and necessary for a novice salesman to establish himself. It would be inequitable to return Mr. Bankston to the same territory on a straight percentage basis before the completion of a training period deemed fair by this court.").

In addition to the three-month salary, the district court awarded Serricchio $12,300 per month for nine months as a draw. This means that Serricchio is guaranteed $12,300 minimum compensation while he rebuilds his book of business; however, during the nine months, any commissions Serricchio earns will be credited to the draw such that he will not earn more than $12,300 unless he earns commissions in excess of that amount. In light of the fact that Wachovia is not obligated to provide Serricchio with any other form of assistance in rebuilding his book of business, we conclude that the district court did not abuse its discretion in awarding the nine month draw, especially in that it (along with the three month salary) corresponds to USERRA's twelve month reemployment right, *see* 38 U.S.C. § 4316(c)(1) ("A person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause . . . within one year after the date of such reemployment. . . .). Like the three-

42

month salary, the draw is similar to an award of front pay, and we hold that the fact that a portion of the calculated damages are to be paid to Serricchio as a component of his reinstatement does not render the award an abuse of discretion.

We note that the Department of Labor takes the position that Wachovia may have been required to offer Serricchio a salary in the first instance in order to meet its obligations under USERRA. We find the Department's reasoning persuasive, but we are not required to reach that question. The question presented to us is limited to the nature and scope of the *remedy* for the USERRA violation once the jury entered a finding of liability. In light of the broad equitable powers afforded a court to vindicate veterans' rights, *see* 38 U.S.C. § 4323(e), and the liberal construction given to USERRA "for the benefit of those who," like Serricchio, "left private life to serve their country," *see Fishgold*, 328 U.S. at 285, we cannot conclude that the district court abused its discretion in awarding a standard salary and draw to Serricchio for a one year period.

## CONCLUSION

For the reasons stated herein, we **AFFIRM** the orders of the district court.